UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SIGNATURE EXPLORATION AND
PRODUCTION CORPORATION n/k/a
GROWBLOX SCIENCES, INC.,

                Plaintiff,

                -against-

GCM ADMINISTRATIVE SERVICES, LLC,
STRATEGIC TURNAROUND EQUITY
PARTNERS, L.P. (CAYMAN), SETH M.
LUKASH, and GARY HERMAN,

                Defendants.

---

GCM ADMINISTRATIVE SERVICES, LLC,
STRATEGIC TURNAROUND EQUITY
PARTNERS, L.P. (CAYMAN), SETH M.
LUKASH, and GARY HERMAN,

                Counterclaim-Plaintiffs,

                -against-

SIGNATURE EXPLORATION AND
PRODUCTION CORPORATION n/k/a
GROWBLOX SCIENCES, INC.,

                Counterclaim-Defendant.

---

Docket No. 14 Civ. 2280 (ER)

ANSWER, COUNTERCLAIMS, AND
THIRD PARTY CLAIMS

2607355-2

GCM ADMINISTRATIVE SERVICES, LLC, STRATEGIC TURNAROUND EQUITY PARTNERS, L.P. (CAYMAN), SETH M. LUKASH, GARY HERMAN and DIGITAL CREATIVE DEVELOPMENT CORPORATION,

Third-Party Plaintiffs,

-against-

CRAIG ELLINS, TODD DENKIN, JOSEPH J. BIANCO, GROWOPP, LLC, and TUMBLEWEED HOLDINGS, INC. f/k/a GROWOPP HOLDINGS, INC.,

Third-Party Defendants.

Defendants and Counterclaim-Plaintiffs GCM Administrative Services, LLC, Strategic Turnaround Equity Partners, L.P. (Cayman), Seth M. Lukash, and Gary Herman and Third Party-Plaintiffs GCM Administrative Services, LLC, Strategic Turnaround Equity Partners, L.P. (Cayman), Seth M. Lukash, Gary Herman, and Digital Creative Development Corporation, by their attorneys Olshan Frome Wolosky LLP, for their Answer, Counterclaims, and Third-Party Claims state:

## <u>ANSWER</u>

1.     Aver that paragraph 1 of the First Amended Complaint (the "Complaint") consists of legal conclusions for which no answer is necessary.

2.     Deny the allegations contained in paragraph 2 of the Complaint, and respectfully refer the Court to the promissory notes for their complete terms.  To the extent that paragraph 2 of the Complaint consists of legal conclusions, aver that no answer is necessary.

3.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint, except aver that, upon information and

2

belief, Signature Exploration and Production Corporation is now known as Growblox Sciences, Inc.

4. Deny the allegations in paragraph 4 of the Complaint, except admit that Herman is a citizen of New York and GCM Services is incorporated in Delaware and registered in New York as a foreign limited liability company.

5. Deny the allegations in paragraph 5 of the Complaint, except admit that STEP is a Cayman Islands limited partnership and registered in New York as a foreign limited partnership, and that Galloway Capital is a limited liability company incorporated in the State of Delaware and registered in New York as a foreign limited liability company.

6. Deny the allegations in paragraph 6 of the Complaint, except admit that Herman is a member of Galloway Capital and has its principal place of business at 720 Fifth Avenue, 10th Floor, New York, NY 10019.

7. Deny the allegations in paragraph 7 of the Complaint, except admit that Lukash is a citizen of the State of Connecticut.

8. Deny the allegations in paragraph 8 of the Complaint, except admit that Herman is a citizen of the State of New York and that Herman is the managing partner of GCM Services, which is the investment manager of STEP.

9. Aver that paragraph 9 of the Complaint consists of legal conclusions for which no answer is necessary.

10. Admit with respect to paragraph 10 of the Complaint that Herman is a citizen of New York and Lukash is a citizen of Connecticut. To the extent that paragraph 10 of the Complaint consists of legal conclusions, aver that no answer is necessary.

2607355-2

11.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint.

12.     Deny the allegations contained in paragraph 12 of the Complaint, and respectfully refer the Court to the promissory notes for their complete terms.

13.     Deny the allegations contained in paragraph 13 of the Complaint, and respectfully refer the Court to the promissory notes for their complete terms.

14.     Deny the allegations contained in paragraph 14 of the Complaint, and respectfully refer the Court to the promissory notes for their complete terms.

15.     Deny the allegations contained in paragraph 15 of the Complaint, and respectfully refer the Court to the promissory notes for their complete terms.

16.     Deny the allegations contained in paragraph 16 of the Complaint, and respectfully refer the Court to the promissory notes for their complete terms.

17.     Deny the allegations contained in paragraph 17 of the Complaint, and respectfully refer the Court to the promissory notes for their complete terms.

18.     Deny the allegations contained in paragraph 18 of the Complaint, and respectfully refer the Court to the promissory notes for their complete terms.

19.     Deny the allegations contained in paragraph 19 of the Complaint, and respectfully refer the Court to the letter of intent for its complete terms.

20.     Deny the allegations contained in paragraph 20 of the Complaint, and respectfully refer the Court to the letter of intent for its complete terms.

21.     Deny the allegations contained in paragraph 21 of the Complaint, and respectfully refer the Court to the letter of intent for its complete terms.  To the extent that paragraph 21 of the Complaint consists of legal conclusions, aver that no answer is necessary.

4

22.     Deny the allegations contained in paragraph 22 of the Complaint, and respectfully refer the Court to the letter of intent for its complete terms.

23.     Deny the allegations contained in paragraph 23 of the Complaint, and respectfully refer the Court to the letter of intent for its complete terms.

24.     Deny the allegations contained in paragraph 24 of the Complaint, and respectfully refer the Court to the letter of intent for its complete terms.

25.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint, and respectfully refer the Court to the promissory notes and letter of intent for their complete terms.

26.     Deny the allegations contained in paragraph 26 of the Complaint, and respectfully refer the Court to the promissory notes and letter of intent for their complete terms.  To the extent that paragraph 26 of the Complaint consists of legal conclusions, aver that no answer is necessary.

27.     Deny the allegations contained in paragraph 27 of the Complaint, and respectfully refer the Court to the promissory notes and letter of intent for their complete terms.  To the extent that paragraph 27 of the Complaint consists of legal conclusions, aver that no answer is necessary.

28.     Deny the allegations contained in paragraph 28 of the Complaint, and respectfully refer the Court to the promissory notes and letter of intent for their complete terms.  To the extent that paragraph 28 of the Complaint consists of legal conclusions, aver that no answer is necessary.

2607355-2

29.     Deny the allegations contained in paragraph 29 of the Complaint, except admit that, Herman and Lukash are entitled to the issuance of 40% of the post-merger stock of SXLP to be issued to Ellins, which equals 40% of 12.5 million shares or 5 million shares.

30.     Deny the allegations contained in paragraph 30 of the Complaint, except admit that Herman and Lukash are each entitled to receive 20% of SXLP as a pre-merger entity, which entitles them to receive 24% of the post-merger entity.

31.     Deny the allegations contained in paragraph 31 of the Complaint.

32.     Deny the allegations contained in paragraph 32 of the Complaint.  To the extent that paragraph 32 of the Complaint consists of legal conclusions, aver that no answer is necessary.

33.     Deny the allegations contained in paragraph 33 of the Complaint.

34.     Deny the allegations contained in paragraph 34 of the Complaint.

35.     Deny the allegations contained in paragraph 35 of the Complaint.  To the extent that paragraph 35 of the Complaint consists of legal conclusions, aver that no answer is necessary.

36.     Deny the allegations contained in paragraph 36 of the Complaint.  To the extent that paragraph 36 of the Complaint consists of legal conclusions, aver that no answer is necessary.

37.     Aver that paragraph 37 of the Complaint consists of legal conclusions for which no answer is necessary.

## CLAIM FOR RELIEF

38.     Repeat their responses in Paragraphs 1 through 37 as if fully set forth herein.

39.     Aver that paragraph 39 of the Complaint consists of legal conclusions for which no answer is necessary.

6

**FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

The Complaint is barred by documentary proof to the contrary.

**THIRD AFFIRMATIVE DEFENSE**

The Complaint is barred by the doctrine of unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**

The Complaint is barred by plaintiff's bad faith, fraud, and/or misrepresentation.

**FIFTH AFFIRMATIVE DEFENSE**

The Complaint is barred by the doctrines of laches, waiver, and/or equitable estoppel.

**SIXTH AFFIRMATIVE DEFENSE**

Defendants reserve the right to rely on any additional defenses to the Complaint that become available or apparent during discovery proceedings in this action, and respectfully reserve the right to amend this Answer for the purpose of asserting such defenses.

**COUNTERCLAIMS/THIRD-PARTY CLAIMS**

Counterclaim-Plaintiffs and Third-Party Plaintiffs GCM Administrative Services, LLC, Strategic Turnaround Equity Partners, L.P. (Cayman), Seth M. Lukash, Gary Herman, and Digital Creative Development Corporation, by their attorneys, Olshan Frome Wolosky LLP, for their Counterclaims and Third-Party Claims state:

**JURISDICTION**

1.      This Court has subject matter jurisdiction over these Counterclaims and Third-Party Claims pursuant to 28 U.S.C. § 1367.

2607355-2

<u>PARTIES</u>

2.      Counterclaim-Plaintiff/Third-Party Plaintiff GCM Administrative Services, LLC ("GCM") is a limited liability company organized and existing under the laws of the State of Delaware and registered in New York as a foreign limited liability company.

3.      Counterclaim-Plaintiff/Third-Party Plaintiff Strategic Turnaround Equity Partners, L.P. (Cayman) ("Strategic") is a Cayman Islands limited partnership and registered in New York as a foreign limited partnership.

4.      Counterclaim-Plaintiff/Third-Party Plaintiff Seth M. Lukash is a citizen of the State of Connecticut, residing in Connecticut.

5.      Counterclaim-Plaintiff/Third-Party Plaintiff Gary Herman is a citizen of the State of New York and resides in New York.

6.      Third-Party Plaintiff Digital Creative Development Corporation ("Digital Creative") is a publicly-traded corporation incorporated in the State of Utah, having its principal place of business at 720 Fifth Avenue, 10th Floor, New York, New York 10019.

7.      Upon information and belief, Counterclaim-Defendant/Third-Party Defendant Signature Exploration and Production Corporation ("SXLP"), now known as Growblox Sciences, Inc. ("GBLX"), is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 4700 Millenia Blvd, Suite 175, Orlando, Florida 32819.

8.      Upon information and belief, Third-Party Defendant Craig Ellins is a citizen of Nevada, residing in 3035 East Patrick Lane, #9, Las Vegas, NV 89120.

9.      Upon information and belief, Third-Party Defendant Todd Denkin is a citizen of Nevada, residing in 391 Placer Creek Lane, Henderson, Nevada 89014.

2607355-2

10.     Upon information and belief, Third-Party Defendant Joseph J. Bianco is a citizen of New York, residing in 506 Sag Harbor Turnpike, East Hampton, NY 11937-2573.

11.     Upon information and belief, Third-Party Defendant GrowOpp, LLC ("GrowOpp") is a limited liability company organized and existing under the laws of the State of Nevada and having its principal place of business at 391 Placer Creek Lane, Henderson, Nevada 89014.

12.     Upon information and belief, Third-Party Defendant Tumbleweed Holdings, Inc., formerly known as GrowOpp Holdings, Inc., ("Tumbleweed") is a company incorporated in the State of Delaware and having its principal place of business at 391 Placer Creek Lane, Henderson, Nevada 89014.

<u>FACTS</u>

13.     Starting in approximately February 2013, Counterclaim-Plaintiffs/Third-Party Plaintiffs Gary Herman and Seth Lukash began working on a business venture together with Third-Party Defendants Craig Ellins, Todd Denkin, and Joseph J. Bianco (collectively, the "Parties").  The ultimate goal of their venture was to build a company that would sell products that would consistently produce pesticide-free medicinal-grade cannabis, transform it into ingestible and topical products, and distribute it in compliance with state and local guidelines and laws.  The company was to sell indoor hydroponic systems for growing cannabis, provide expert growing advice to hydroponics customers, and assist entities in securing the proper licensing and bonds to grow, distribute, and sell cannabis and cannabis-based products.

14.     Herman has known Ellins for over ten (10) years, having invested in several other ventures together.  In addition, Herman, Lukash and STEP had invested in Ellins' last company which was in the legal cannabis sector.

15.     Ellins and Denkin were tasked with development of equipment and related products that would support the legal production and use of cannabis.  Along with a financial partner, Joseph Bianco, they owned GrowOpp, LLC, a thinly capitalized LLC with nominal assets, which they used for their nascent business.

16.     Herman is the Chairman of Digital Creative, a publicly traded shell that offered liquidity to each of Denkin, Ellins, Bianco, Herman and Lukash, as well as a platform to raise capital and acquire businesses in the cannabis sector.

17.     Herman and Lukash worked closely with Ellins, Denkin and Bianco to develop the business plan, create the pro-forma financials, develop the corporate website, to raise financing, create investor presentations, and other business development related responsibilities. Lukash also devoted his skills as a chief executive officer and chief operating officer of several publicly traded and private technology and software companies.

18.     In addition, with his expertise in manufacturing, industrial design, marketing and business strategy, Lukash was able to advance the hydroponic system, called GrowBlox, to a commercial marketable design and product.

19.     Further, Lukash had numerous conference calls and emails with Ellins and Wayne Love ("Love") a design consultant to discuss, analyze and recommend improvements to the product design,

20.     Based upon his experience with a previous company, Lukash was also instrumental in developing the remote monitoring technology which is a primary component of the GrowBlox system.

21.     Herman and Lukash performed this work over approximately 12 months during 2013 and 2014.

2607355-2

22.    From the start, the five individuals each had separate responsibilities with respect to the venture, but throughout they collaborated in performing their work, all with a common goal.  Over the course of the year they placed their trust and confidence in each other, rather than the various corporate vehicles through which they worked.  There were regular meetings, conference calls, emails and texts between the Parties throughout.

23.    After the Parties began their work in 2013, they decided to memorialize their plans and anticipated structure in a non-binding letter of intent (the "LOI") dated July 31, 2013. The LOI contemplated a merger between GrowOpp and Digital Creative, with Digital Creative issuing shares of its common stock to pay for the acquisition.  The five co-venturors contemplated that, after the combination between GrowOpp and Digital Creative, each would have an equal number of Digital Creative shares.

24.    The merger contemplated that GrowOpp principals would receive 60% of Digital Creative's shares; new investors, 35%; and the existing public shareholders, 5%.  The LOI provided for automatic termination 90 days after signing, or October 29, 2013.

25.    The term sheet appended to the LOI provided that "all parties," not Digital Creative, would attempt to raise an aggregate of up to $1.5 million through the private placement of common shares.

26.    In anticipation of the LOI in July 2013, Herman and Lukash, through GCM and Strategic, provided GrowOpp with vital capital to develop the product and business strategy, receiving notes from GrowOpp that were convertible into "shares of common stock of DCDC." This language reflected the Parties' expectation that will be shared equally in the venture, through Digital Creative shares.  After the LOI, they provided additional capital, again receiving notes convertible in Digital Creative common stock.

11

27.     During the LOI term, the five individuals continued to work as before, with Herman and Lukash assisting in the development and implementation of GrowOpp's operational capability.  It was memorialized that Herman would be the Chairman, Lukash the Chief Executive Officer, Ellins a Director, Denkin a Director of Marketing, and Bianco a Business and Acquisitions Advisor to the Company.  It was also agreed that Lukash, Ellins and Denkin would join the Board of Directors of Digital Creative with Herman and another director of Digital Creative.  Counsel for the Parties drafted the Private Placement Memorandum, Subscription Documents and Merger Agreement contemplated for the transaction.

28.     After October 29, 2013, the date that the LOI terminated, Denkin, Ellins, Herman, Lukash and Bianco continued to work together in furtherance of their venture.  There were emails confirming this as well as the ownership by Herman and Lukash.  In addition, counsel for the Parties continued to work on the transaction well into February 2014.  Herman, Lukash and Bianco even received an invoice from GrowOpp's counsel on February 13, 2014.

29.     Herman and Lukash made three additional investments on November 18, 2013, December 2, 2013, and December 20, 2013, again receiving notes convertible into shares of "DCDC" common stock.

30.     Herman and Lukash also expended several thousand dollars over and above the total amount of the notes on the partnership's behalf.  These additional funds were used for, among other things, legal fees for GrowOpp's counsel, travel and entertainment, and incorporation fees.

31.     It was commonly recognized between Herman, Lukash, Ellins, Denkin, and Bianco that they were working together toward their goals as a partnership, in which each was an

equal owner, each had joint management and control, each contributed capital, and each was expected to bear any losses.

32.     This understanding was memorialized in writing and a part of the Private Placement Memorandum dated December 15, 2013.  For example, the Private Placement Term Sheet which was drafted by GrowOpp's counsel stated:  "An aggregate of 13,714,350 shares of Common Stock of the Company . . . are currently outstanding and are owned in equal amounts by Gary Herman, Seth Lukash, Craig Ellins, Todd Denkin, and Joseph J. Bianco. . . ."

33.     Therefore, together, Herman and Lukash's ownership in the partnership was 40%.

34.     As recent as early-March 2014 there were meetings between all of the Parties in regard to the proposed transaction and closing on a first round of financing.

35.     Rather than continue working within the partnership, however, Ellins, Denkin, and Bianco abruptly changed course.  They decided to divert the venture to themselves, to the exclusion of Herman and Lukash, when, on or about March 13, 2014, they enabled the sale of substantially all of the assets developed by the partnership to Counterclaim-Defendant SXLP.

36.     The asset sale was memorialized in a purported Asset Assignment, Acquisition and Professional Association Agreement dated March 13, 2014, filed by SXLP with the SEC as an exhibit to a Form 8-K as of March 13, 2014.

37.     This purported sale included most, if not all, of the assets that were developed by Herman and Lukash for the partnership, including trademarks, patents, business plans, investor presentations and histories, websites, drawings and digital artwork, reports, and other related and valuable assets.

38.     Herman and Lukash did not give permission to Counterclaim-Defendants and/or Third-Party Defendants to perform such a sale.

39.    The Counterclaim-Defendants and/or Third-Party Defendants even used the websites which were developed for the transaction and merely, "changed the name" to reflect their new venture and included all of the people on the original team, <u>except</u> Herman and Lukash.

40.    To date, Herman and Lukash have never been compensated for their work for the partnership or for developing the assets that were sold.

**FIRST COUNTERCLAIM FOR RELIEF**
(Declaratory Judgment)

41.    Counterclaim-Plaintiffs/Third-Party Plaintiffs repeat the allegations in paragraphs 1 to 40 above.

42.    By reason of the foregoing, Counterclaim-Plaintiffs/Third-Party Plaintiffs are entitled to declaratory judgment as to the rights and relations of the Parties as set forth in the foregoing allegations of the Counterclaims/Third-Party Claims.

43.    Specifically, Counterclaim-Plaintiffs/Third-Party Plaintiffs are entitled to declaratory judgment that, through their respective actions, a general partnership was formed among Herman, Lukash, Ellins, Denkin, and Bianco, in which each individual owned an equal share.

44.    Herman, Lukash, Ellins, Denkin, and Bianco formed the general partnership by working together to carry out a specific business purpose, i.e., that of creating a business to ultimately produce pesticide-free medicinal-grade cannabis, transform it into ingestible and topical products, and distribute it in compliance with state and local guidelines and laws.

45.    Herman, Lukash, Ellins, Denkin, and Bianco shared equal rights and responsibilities in connection with management of the business.  Each of Herman, Lukash, Ellins, Denkin, and Bianco assumed full responsibility for all of the business's debts and

2607355-2

obligations.  Herman and Lukash also expended significant sums on behalf of the business.

Therefore, Herman and Lukash are entitled to declaratory judgment that they are collectively

40% owners of the general partnership.

46.      Counterclaim-Plaintiffs/Third-Party Plaintiffs are further entitled to declaratory

judgment that the assets purportedly sold on or about March 13, 2014 pursuant to the Asset

Assignment, Acquisition and Professional Association Agreement were rightful assets of the

partnership.

## SECOND COUNTERCLAIM FOR RELIEF
(Breach of Fiduciary Duty)

47.      Counterclaim-Plaintiffs/Third-Party Plaintiffs repeat the allegations in paragraphs

1 to 46 above.

48.      As described in the above allegations, Herman, Lukash, Ellins, Denkin, and

Bianco formed a general partnership.  As such, each owed fiduciary duties of care and loyalty to

the partnership and the other partners.

49.       By virtue of Counterclaim-Defendants and Third-Party Defendants entering into

the Asset Assignment, Acquisition and Professional Association Agreement, they breached their

fiduciary duties of care and loyalty to the general partnership and to their partners by transferring

significant assets of the general partnership to another entity without permission from or the

knowledge of Herman and Lukash, who worked hard to create and/or provide many of these

assets to the general partnership.

50.      As a proximate result of the breaches of the fiduciary duties of care and loyalty,

Counterclaim-Plaintiffs and Third-Party Plaintiffs have suffered damages.

## THIRD COUNTERCLAIM FOR RELIEF
### (Unjust Enrichment)

51.      Counterclaim-Plaintiffs/Third-Party Plaintiffs repeat the allegations in paragraphs 1 to 50 above.

52.      By virtue of providing the services in creating assets as described above, Counterclaim-Plaintiffs/Third-Party Plaintiffs have conferred a benefit on Counterclaim-Defendants/Third-Party Defendants, who have knowledge thereof.

53.      Counterclaim-Defendants/Third-Party Defendants voluntarily accepted and retained the benefit conferred by Counterclaim-Plaintiffs/Third-Party Plaintiffs.

54.      The circumstances render Counterclaim-Defendants/Third-Party Defendants' retention of the benefit inequitable unless the Counterclaim-Defendants/Third-Party Defendants pay to Counterclaim-Plaintiffs/Third-Party Plaintiffs the value of the benefit.

55.      Counterclaim-Defendants/Third-Party Defendants have been unjustly enriched at the expense of Counterclaim-Plaintiffs/Third-Party Plaintiffs.

56.      Counterclaim-Plaintiffs/Third-Party Plaintiffs are entitled to damages as a result of Counterclaim-Defendants/Third-Party Defendants' unjust enrichment, including the disgorgement of all monies unlawfully accepted by Counterclaim-Defendants/Third-Party Defendants from Counterclaim-Plaintiffs/Third-Party Plaintiffs.

## FOURTH COUNTERCLAIM FOR RELIEF
### (Quantum Meruit)

57.      Counterclaim-Plaintiffs/Third-Party Plaintiffs repeat the allegations in paragraphs 1 to 56 above.

58.      As described more fully above, Counterclaim-Defendants/Third-Party Defendants requested Counterclaim-Plaintiffs/Third-Party Plaintiffs' performance in creating certain assets

2607355-2

for the general partnership, including but not limited to business plans, designs, investor presentations and histories, and websites.

59.     Counterclaim-Plaintiffs/Third-Party Plaintiffs performed the requested services by creating the described assets.

60.     The services rendered by the Counterclaim-Plaintiffs/Third-Party Plaintiffs had a fair and reasonable value.

61.     The Counterclaim-Defendants/Third-Party Defendants failed to pay for the goods or services rendered.

### FIFTH COUNTERCLAIM FOR RELIEF
(Breach of Contract)

62.     Counterclaim-Plaintiffs/Third-Party Plaintiffs repeat the allegations in paragraphs 1 to 61 above.

63.     Pursuant to the promissory notes, Counterclaim-Plaintiffs/Third-Party Plaintiffs GCM and Strategic have a right to convert all of a portion of the total principal due into shares of the venture.

64.     Herman and Lukash have given notice on behalf of GCM and Strategic that they wish to convert the principal on the promissory notes into shares of the venture's ultimate entity, Signature.

65.     Counterclaim-Defendants and Third-Party Defendants have refused such a conversion.

66.     Counterclaim-Defendants and Third-Party Defendants are thus in breach of the promissory notes.

67.     GCM and Strategic have suffered damages as a result.

WHEREFORE, Counterclaim-Plaintiffs/Third-Party Plaintiffs respectfully request that the Court award the following relief:

(i)     Declaratory relief that a general partnership was formed as described above;

(ii)    Monetary damages against Counterclaim-Defendants and Third-Party Defendants for breach of fiduciary duty, unjust enrichment, quantum meruit, and breach of contract; and

(iii)   Awarding such other and further relief, including without limitation, attorney's fees, costs and interest, as the Court deems just and proper.

Dated: New York, New York
       May 9, 2014

OLSHAN FROME WOLOSKY LLP

By: _____
    Thomas J. Fleming
    Jennifer L. Heil

    *Attorneys for GCM Administrative
    Services, LLC, Strategic Turnaround
    Equity Partners, L.P. (Cayman), Seth M.
    Lukash, Gary Herman, and Digital
    Creative Development Corporation*

    Park Avenue Tower
    65 East 55th Street
    New York, New York 10022
    (212) 451-2300

18