UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GROWBLOX SCIENCES, INC.,

                              Plaintiffs,

          – against –

GCM ADMINISTRATIVE SERVICES, LLC,
SETH M. LUKASH, GARY HERMAN, and
STRATEGIC TURNAROUND EQUITY
PARTNERS, LP (CAYMAN),

                              Defendants.

DIGITAL CREATIVE DEVELOPMENT
CORPORATION, GCM ADMINISTRATIVE
SERVICES, LLC, STRATEGIC TURNAROUND
EQUITY PARTNERS, LP (CAYMAN), SETH M.
LUKASH, and GARY HERMAN,

                              Counterclaimants,

          – against –

GROWBLOX SCIENCES, INC., TODD DENKIN,
JOSEPH J. BIANCO, TUMBLEWEED HOLDINGS,
INC. f/k/a GROWOPP HOLDINGS, INC., CRAIG
ELLINS, and GROWOPP, LLC,

                              Counterclaim-Defendants.

**OPINION AND ORDER**

14-cv-2280 (ER)

RAMOS, D.J.:

      Plaintiff GrowBlox Sciences, Inc. ("Growblox Sciences") brings this action against GCM

Administrative Services, LLC ("GCM"), Strategic Turnaround Equity Partners, LP ("Strategic"),

Seth M. Lukash ("Lukash"), and Gary Herman ("Herman") (collectively, "Defendants").  *See*

Am. Compl., Doc. 3.  Plaintiff seeks a declaratory judgment as to whether Defendants have a

right to convert certain debt instruments into shares of Growblox Sciences common stock,[1]

pursuant to promissory notes which Strategic and GCM Administrative Services, LLC ("GCM")

issued to an entity named GrowOpp, LLC ("GrowOpp LLC").  *Id.* at ¶¶ 2, 11, 12.

Defendants, along with Digital Creative Development Corporation ("DCDC")

(collectively, "Counterclaimants"), filed counterclaims against Plaintiff, GrowOpp LLC, Craig

Ellins ("Ellins"), Todd Denkin ("Denkin"), Joseph J. Bianco ("Bianco") and Tumbleweed

Holdings, Inc. ("Tumbleweed") (collectively, "Counterclaim-Defendants").  Am. Countercl.,

Doc. 26.  Counterclaimants assert the following five causes of action:  (1) declaratory relief that

a general partnership was formed; (2) breach of fiduciary duty; (3) unjust enrichment;

(4) quantum meruit; and (5) breach of contract.  *Id.*  Counterclaim-Defendants move to dismiss

the first four counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

Counter-Def.'s Mot. Dismiss, Doc. 30.  For the reasons set forth below, Counterclaim-

Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I.   Background

### A.  Factual Background[3]

Starting in February 2013, Counterclaimants Herman and Lukash embarked on a business

venture with Counterclaim-Defendants Ellins, Denkin, and Bianco with the end goal of creating

---

[1] Plaintiff filed the Amended Complaint under the name Signature Exploration and Production Corporation ("Signature").  Since then, Plaintiff has started operating under the name GrowBlox Sciences, Inc.  *See* Countercl., Doc. 11 at ¶ 7; Answer Countercl., Doc. 14 at 2.

[2] In their reply papers, Counterclaim-Defendants indicate that "[t]o the extent that [the fifth] claim seeks $75,000 for alleged breach of certain promissory notes, movants do not seek its dismissal at this time."  Countercl.-Defs.' Reply, Doc. 38 at 6 n.4.  Since the fifth claim for breach of contract is clearly in reference to the promissory notes, Counterclaim-Defendants' motion does not raise a facial challenge against it.  *See* Am. Countercl. ¶¶ 67-72.

[3] The following factual background is based on the allegations in the Amended and Supplemental Counterclaims ("Am. Countercls."), Doc. 26, which the Court accepts as true for purposes of the instant motion.  *See Koch v.*

a company that would grow and sell medicinal-grade marijuana in compliance with state and local laws.  Am. Countercls. ¶ 13; *see also* Countercl.'s Mem. L. Opp., Doc. 36 at 6.  Ellins, Denkin, and Bianco owned GrowOpp LLC, which Counterclaimants describe as "a thinly capitalized LLC with nominal assets, which they used for their nascent business."  *Id*. at ¶ 15.  Ellins and Denkin were responsible for developing the equipment and related products.  *Id*.  As Chairman of DCDC, Herman provided liquidity and a platform to raise capital and acquire businesses.  *Id*. at ¶ 16.  As a chief executive and chief operating officer of several technology and software companies, Lukash brought his expertise in manufacturing, industrial design, marketing, and business strategy to the venture.  *Id*. at ¶¶ 17-18.  Although the five parties had individual responsibilities, they also collaborated with one another.  *Id*. at ¶ 22.  Together, they developed a business plan, created pro-forma financials, built the corporate website, raised financing, and created investor presentations, among other business development projects.  *Id*. at ¶ 17.  They also regularly participated in meetings, conference calls, emails, and texts.  *Id*. at ¶ 22.  Counterclaimants allege that "they placed their trust and confidence in each other, rather than the various corporate vehicles through which they worked."  *Id*.

It was not until several months later, on July 31, 2013, that the co-venturers drafted a non-binding letter of intent ("LOI") to "memorialize their plans and anticipated structure[.]"  *Id*. at ¶ 23.  By its terms, the LOI described the "proposed transaction" as the merger of DCDC, GrowOpp LLC, and a company known as GrowBlox Holdings, Inc., through the acquisition by DCDC of substantially all of the assets of GrowOpp LLC and GrowBlox Holdings, Inc.  Am.

---

*Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  In addition, it cites documents which are incorporated by reference.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

Compl., Ex. H.  As relevant to the instant motion, the LOI also contained a waiver of liability

provision with respect to the parties and their representatives.  Am. Compl., Ex. H at ¶ 6.  The

LOI was signed by Herman on behalf of DCDC, Denkin, on behalf of GrowOpp LLC, and

Lukash as "Chief Executive Officer" on behalf of Growblox Holdings, Inc.[4]  *Id.* at 6.

Meanwhile, between July 5, 2013 and December 20, 2013, Herman and Lukash, through entities

named GCM and Strategic,[5] provided GrowOpp LLC with "capital" in the form of promissory

notes, which included an option to convert the principal due into shares of DCDC common

stock."[6]  Am. Countercls. ¶¶ 26, 29.  Herman and Lukash also expended "several thousand

dollars over and above the notes on the partnership's behalf."  *Id*. at ¶ 30.

　　　　The LOI expired by its own terms, ninety days after signing, on October 29, 2013,

without the proposed transaction having taken place.  *Id*. at ¶ 28.  Notwithstanding the expiration

of the LOI, Denkin, Ellins, Bianco, Herman, and Lukash continued to work together in

furtherance of their venture.  *Id*.  Counsel for the parties worked on the proposed transaction

through February 2014.  *Id*.  According to Counterclaimants, the five individual parties all

---

[4] The LOI describes GrowBlox Holdings, Inc. as a Delaware Corporation with its principal place of business in Henderson, Nevada.  Am. Compl., Ex. H at 1.  It is not a party to this litigation, however, and its management is nowhere described.

[5] Herman is a managing partner of GCM, which is the investment manager of Strategic.  Defs.' Answer, Doc. 26 at ¶ 8.  In their Amended Complaint, Counterclaim-Defendant GrowBlox Sciences describes Lukash as being "associated" with GCM and Strategic.  Am. Compl. ¶ 7.  In his answer, Lukash denies the allegation of association. Defs.' Answer ¶ 7.  However, he is listed as a signatory to each of the seven promissory notes Counterclaimants are suing on.  *See* Am. Compl., Exs. A-G.

[6] GrowBlox Sciences attached seven promissory notes to the Amended Complaint.  These notes document six loans from GCM to GrowOpp LLC totaling $65,000 and one loan from Strategic to GrowOpp LLC for $10,0000.  Am. Compl., Exs. A-G. Each note contains a provision stating, in identical or similar terms, "[a]t the Lender's sole discretion, it may, in lieu of payment of the principal hereof, convert all or a portion of the total principal and interest due into shares of Common Stock of Digital Creative Development Corporation (DCDC) upon consummation of a merger or similar transaction."  *See e.g.* Am. Compl., Ex. F at ¶ 6(b).

recognized that they were "working together toward their goals as a partnership" and their understanding was "memorialized" in a Private Placement Memorandum ("PPM") dated December 15, 2013.  *Id.* at ¶¶ 31-32.

The PPM, which was drafted by GrowOpp LLC's counsel, *id.* at ¶ 32, includes information pertaining to a privately held Delaware corporation named Tumbleweed Holdings, Inc.[7]  *See* Fleming Aff., Ex. 1.  The PPM describes a private placement offering of Tumbleweed shares, which was to be followed by a merger of Tumbleweed with a subsidiary of DCDC.  *Id.* at 00004057-58.  It states that Tumbleweed was formerly known as GrowOpp Holdings, Inc ("GrowOpp Holdings").[8]  *Id.* at 00004035.  After the merger, DCDC's name would again be changed to "Tumbleweed Holding Corporation" "to reflect DCDC's new business focus."  *Id.* at 00004059.  The PPM identifies Tumbleweed's "Executive Team" as including Lukash as a CEO, COO, and board member, Denkin as Vice President of Marketing and Sales, Bianco as a Business and Acquisitions Advisor, and Ellins and Herman as board members, among a cadre of

---

[7] The Amended Counterclaims never refer to Tumbleweed—even though it is named as a party to this action—nor do they allege that the merger described in the PPM took place.  In their memorandum in response to the instant motion, Counterclaimants refer to the so-called "Tumbleweed Partnership" for the first time, and describe it as the owner of the partnership assets, which Ellins, Denkin, and Bianco sold to Signature.  Doc. 36 at 5.  Counterclaim-Defendants maintain that, although the parties continued to work together after the LOI expired, they never consummated the merger, financing was never raised, and definitive documents—such as the PPM—were never finalized or executed.  Doc. 38 at 3.

[8] Counterclaimants never otherwise mention GrowOpp Holdings—not to be confused with GrowOpp LLC.  Counterclaim-Defendants believe that GrowOpp Holdings and GrowBlox Holdings, Inc., identified in the LOI as one of the sellers, are "likely" the same entity and that the PPM contained a "scrivener's error."  Doc. 32 at 6 n.6.  However, they provide no basis for that assumption and there is reason to believe it is not an error.  For example, the Court notes that the first four promissory notes documenting the loans made by GCM and Strategic to GrowOpp LLC include a provision noting that "all rights and obligations will be assumed by *GrowBlox Holdings, Inc.*, a Delaware corporation upon the consummation of a merger or similar transaction."  Am. Compl., Exs. A-D at ¶ 6(a) (emphasis added).  The last three notes contain an identical provision, except they substitute GrowBlox Holdings Inc. with *GrowOpp Holdings, Inc.*  Am. Compl., Exs. E-G at ¶ 6(a).  In any event, the record before the Court does not permit the inference that GrowBlox Holdings, Inc. is the same as, or a predecessor corporation to, GrowOpp Holdings.

other individuals.  *Id*. at 00004054-56.  According to the PPM, the five individual parties owned, in equal amounts, the 13,714,350 shares of outstanding Tumbleweed stock.  *Id.* at 00004057, *see also* Am. Countercls. ¶ 32.  It also indicates that Tumbleweed controlled one hundred percent of GrowOpp LLC's membership interests.  *Id*.

The parties continued to conduct meetings concerning the proposed transaction through early March 2014.  Am. Countercls. ¶ 34.  However, Counterclaimants allege that on March 13, 2014, Ellins, Denkin, and Bianco "abruptly" changed course and sold the "partnership assets" to Signature.[9]  *Id*. at ¶ 35.  These assets included trademarks, patents, business plans, investor presentations and histories, websites, drawings and digital artwork, reports and other related items.  *Id*. at ¶ 37.  Herman and Lukash did not authorize this transaction and have never been compensated for their shares in the partnership.  *Id*. at ¶¶ 38, 40.

### B.  Procedural Background

GrowBlox Sciences commenced this declaratory judgment action against GCM, Strategic, Lukash, and Herman on April 1, 2014.  *See* Compl., Doc. 2.  It filed an Amended Complaint on April 9, 2014.  *See* Doc. 3.  On May 9, 2014 , Defendants filed their Answer, which included counterclaims brought by themselves, along with DCDC, against GrowBlox Sciences, GrowOpp LLC, Ellins, Denkin, Bianco and Tumbleweed.  Countercls., Doc. 11. Defendants filed Amended and Supplemental Counterclaims on November 19, 2014.  Am. Countercls., Doc. 26.

---

[9] While the Counterclaims describe the sale of the "partnership assets" as being from Ellins, Denkin and Bianco to Signature, the Form 8-K filed with the SEC on March 19, 2014 concerning the asset sale agreement lists only Ellins individually as the seller.  *See* Doc. 35, Ex. 2.  Bianco and Denkin are not referenced as owners of the assets.

While Counterclaimants styled their claims as "third-party" claims against "third-party defendants," Counterclaim-Defendants correctly point out that this case does not involve third-party practice as defined by Rule 14 of the Federal Rules of Civil Procedure. *See* Countercl.-Defs.' Mem. L. Supp. Mot. Dismiss, Doc. 32 at 6 n.1. Rule 14 governs when a defendant may act as a third-party plaintiff by bringing a claim against an outside party. It only applies to claims against nonparties who are or may be liable to the third-party plaintiff for all or part of the claim against it. Fed. R. Civ. P. 14(a)(1). Here, Defendants are not claiming that Ellins, Denkin, Bianco, GrowOpp LLC and Tumbleweed may be liable for any claims asserted against them by GrowBlox Sciences, the Plaintiff in the underlying action. Moreover, the mere fact that Defendants have added DCDC as a counterclaimant does not make any of them third-party plaintiffs. The claims brought by Defendants and DCDC are covered by Rule 13, which governs compulsory and permissive counterclaims, along with the joinder of additional parties.[10] Third-party practice is inappropriate here. Therefore, the Court will refer to Defendant and DCDC as Counterclaimants and the opposing parties as Counterclaim-Defendants. The Court will direct that the Clerk of the Court amend the caption accordingly.

---

[10] Specifically, Rule 13(h) indicates that the addition of a person as a party to a counterclaim is subject to Rules 19 and 20. "Courts typically construe Rule 13(h) liberally 'in an effort to avoid multiplicity of litigation, minimize the circuity of actions, and foster judicial economy.'" *Levine v. Landy*, 860 F. Supp. 2d 184, 188 (N.D.N.Y. 2012) (quoting 6 Charles Alan Wright et al., Federal Practice and Procedure § 1434 (3d ed.)). Rule 19 is applicable to the required joinder of parties while Rule 20 covers permissive joinder. Counterclaim-Defendants have not objected to the addition of parties. Furthermore, several of the counterclaims are asserted by and against all of the parties jointly, arise out of the same transaction or occurrence, and involve common questions of law and fact, as required by Rule 20.

## II.   Discussion

### A.   Rule 12(b)(6) Motion to Dismiss Standard

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 CIV. 6017 (KBF), 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013) (citation omitted).   When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).   The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*   If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)).   "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of

a claim for relief without resolving a contest regarding its substantive merits,'" and without

regard for the weight of the evidence that might be offered in support of Plaintiffs' claims.

*Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v.*

*City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

 The Court may consider a document that is attached to the complaint, incorporated by

reference or integral to the complaint, provided there is no dispute regarding its authenticity,

accuracy or relevance.  *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010)

(citations omitted).  "To be incorporated by reference, the [c]omplaint must make a clear,

definite and substantial reference to the documents."  *Mosdos Chofetz Chaim, Inc. v. Vill. of*

*Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (internal quotation marks and citation

omitted).  The Amended Counterclaims cite and rely on two documents:  (1) the July 31, 2013

LOI, attached to Plaintiff's Amended Complaint; and (2) the December 15, 2013 PPM, which

Counterclaimants submitted contemporaneously with the filing of their opposition papers.  *See*

Am. Countercls. ¶¶ 23-28, 32.  Specifically, they state that these two documents "memorialized"

the understanding between the parties regarding the structure of their business relationships.  *Id.*

at ¶¶ 23, 32.  The LOI and PPM are clearly referenced by the Amended Counterclaims, are

highly relevant to the question of whether the parties formed a partnership, and are therefore

incorporated by reference.  Thus, the Court will consider them in deciding the present motion.

Counterclaimants also submitted a copy of GrowBlox Sciences' Form 8-K, of which the Court

can take judicial notice.  *See* Fleming Aff., Doc. 35 at Ex. 2.

### B.  The LOI's Waiver Provision

 Counterclaim-Defendants primarily argue that the LOI absolved the parties of any legal

obligation to one another.  They ground this claim in the LOI's waiver provision, which states in

relevant part:

> Unless and until the Purchase Agreement has been so executed and delivered, *none of the parties or any of their respective Representatives has any legal obligation to any other party of any kind with respect to the Proposed Transaction*, whether because of this letter of intent or any other written or oral expression with respect to the Proposed Transaction or otherwise[.]  [. . .]

> *Neither party will have* (and each party hereby irrevocably waives) *any claims against the other party or any of its Representatives arising out of or relating to the Proposed Transaction* other than those, if any, that either such party may in the future have as a party to a Definitive Agreement (if any) with the other party and then only in accordance with the terms thereof, or with respect to the Binding Matters.

Am. Compl., Ex. H at ¶ 6 (emphases added).  The LOI further provides that, upon its termination, all of its provisions would be deemed "null, void, and of no further force or effect." *Id*. at ¶ 7.  However, the LOI carves out an exception for certain provisions, including the above waiver provision, which are intended to survive the termination of the LOI.  *Id*. at ¶¶ 6-7.

Counterclaim-Defendants argue that Counterclaimants' claims are precluded by the LOI's waiver of liability because they arise out of and relate to the proposed transaction.  *See* Counter-Def.'s Reply, Doc. 38 at 2-3.  Specifically, they argue that the Counterclaimants' "attempt to forge a 'joint venture' or 'general partnership' from actions plainly undertaken under and only for the Letter of Intent flies in the face of the language of that document."  Doc. 32 at 10.  However, that argument can take Counterclaim-Defendants only so far, for several reasons. First, while they are undoubtedly correct that actions "plainly undertaken" during the life of the LOI cannot form the basis for a claim "arising out of or relating to the Proposed Transaction," they assume that the LOI continued to define the relationship between the parties after it had expired by its terms.  It did not; at least not necessarily.  Whether the parties continued to operate informally under the precise terms of the LOI, or whether they created a partnership or joint venture, or whether they proceeded under some other arrangement after the LOI expired is a

matter of dispute.[11]  To be sure, Counterclaim-Defendants' arguments would be on stronger footing if the Counterclaimants *had* walked away from the entire venture after the expiration of the LOI, and then brought suit after the sale of the assets to Signature.  But that is not what happened here; Counterclaimants have affirmatively alleged the formation of a partnership.  The LOI expressly provides that its termination will not relieve any party thereto of liability for breach of "any other agreement between the parties."  Am. Compl., Ex. H at ¶ 7.  Counterclaimants allege, and Counterclaim-Defendants do not dispute, that they made additional investments of money and effort after the expiration of the LOI.

Secondly, it bears noting that, contrary to Counterclaim-Defendants' suggestion, the LOI and the PPM describe two different transactions.  The LOI assumed that the "proposed transaction" would consist of DCDC's acquisition of substantially all of GrowOpp LLC and GrowBlox Holdings, Inc.'s assets.  Am. Compl., Ex. H at 1.  The LOI's term sheet further states that the proposed transaction would be structured as a merger of the three entities, with DCDC as the surviving entity.  *Id*. at 7.  As part of the closing, DCDC would then change its name to GrowBlox Holdings, Inc.  *Id.*  In contrast, the PPM provides that, after Tumbleweed's private placement offering, a subsidiary of DCDC would merge into Tumbleweed, which in turn owns all of GrowOpp LLC's membership interests.  Fleming, Ex. 1 at HER00004057-58.  Pursuant to

---

[11] In this regard, the Court is constrained to observe that at several points, Counterclaim-Defendants misstate the allegations contained in the Amended Counterclaims.  For example, in their reply memorandum, they assert that "[e]ventually, the parties ceased work on the Proposed Transaction," and cite ¶ 28 of the Amended Counterclaims for that proposition.  Doc. 38 at 3.  In fact, the Amended Counterclaims at ¶ 28 allege that the parties continued to work on the proposed transaction "well into February 2014," and later allege that "[a]s recent as early-March 2014 there were meetings between all of the Parties in regard to the proposed transaction and closing on the first round of financing."  Am. Countercls. ¶ 34.  The sale of the purported partnership assets from Ellins to Signature took place shortly thereafter, on March 13, 2014.  Thus, any suggestion by Counterclaim-Defendants that Counterclaimants walked away from their joint proposed transaction is specifically refuted by the allegations in the Amended Counterclaims.

the merger, Tumbleweed, not DCDC, would emerge as the surviving corporation.  *Id.* at 00004058.

Thus, while the end result is essentially the same—i.e., the merger of DCDC and GrowOpp LLC—the mechanism for arriving at that result is different.  The PPM anticipates a different surviving entity and does not involve GrowBlox Holdings, Inc.  Given these differences, together with the fact that the Court is required to construe all facts in the light most favorable to the Counterclaimants, the LOI is not clearly applicable to the efforts associated with the transaction described in the PPM nor does it preclude the creation of a new relationship.  To the extent that Counterclaimants base their claims on conduct associated with the PPM, those claims are not precluded by the LOI's waiver provision based on the information currently before the Court.  *See* Am. Compl., Ex. H at ¶ 7 ("The termination of this letter of intent will not relieve any of the parties of liability for such party's pre-termination breach of any of the provisions of this letter of intent or any other agreement between the parties.").[12]

Counterclaimants also briefly argue that the LOI's waiver of liability provision only applies to the entities which were parties to the document, as opposed to any specific individuals. Doc. 36 at 3.  Counterclaim-Defendants respond that the LOI additionally binds the entities'

---

[12] The Court notes, however, that there is some force to Counterclaim-Defendants' argument that the parties' ultimate goal was the same before, during and after the LOI.  For example, although the LOI and PPM describe two different transactions, the Amended Counterclaims provide a continuous narrative wherein the relationship between the parties did not change throughout the time they were working together.  The Amended Counterclaims describe how Herman and Lukash joined a business venture with Ellins, Denkin, and Bianco in 2013, which was documented and outlined in the LOI.  Am. Countercls. ¶¶ 13-22, 23.  The Amended Counterclaims further indicate that, after the LOI expired, the parties "continued to work together in furtherance of their venture" until as recently as March 2014.  *Id.* at ¶¶ 28, 34.  However, in their opposition papers, in an apparent effort to avoid the waiver provision of the LOI, Counterclaimants seek to have it both ways.  They claim that the partnership was formed *after* the LOI expired to circumvent the waiver provision, while citing to various actions that *predate* the LOI to separately argue that they sufficiently pled the elements of a partnership.  Doc. 36 at 12-14.

representatives, which would include Ellins, Denkin and Bianco.[13]  Doc. 38 at 8.  In reality, the

applicability of the LOI's liability provision is more complicated than either of the parties

maintain.  The "parties" to the LOI consist of DCDC, GrowOpp LLC, and GrowBlox Holdings,

Inc.  *See* Am. Compl., Ex. H at 6.  The waiver provision states that none of the parties *or* their

representatives have any obligation to any other *party*.  *See id.* at ¶ 6.  Furthermore, each *party*

waives any claims against another party *or* a representative.  *Id.*  It says nothing about the rights

or obligations of the entities' representatives to one another.  The LOI cannot reasonably be read

as governing the relationship between Herman, Lukash, Ellins, Denkin, and Bianco as

individuals.  Nor is there any indication that the LOI applies to fellow Counterclaimants GCM

and Strategic, who are neither parties to the LOI or representatives.[14]  Therefore, the LOI does

not provide a basis for a sweeping dismissal of the claims given the facts currently before the

Court.

### C.  Request for Declaratory Judgment as to Partnership Status

The first amended counterclaim asks the Court to issue a declaratory judgment stating

that, "through their respective actions, a general partnership was formed among Herman, Lukash,

Ellins, Denkin, and Bianco, in which each individual owned an equal share."  Am. Countercl.

¶ 43.  It also seeks a declaratory judgment stating that Herman and Lukash have a collective

forty percent ownership stake in the partnership and that the assets acquired by Signature

constituted partnership property.  *Id.* at ¶¶ 45-46.  Counterclaim-Defendants argue, in part, that

---

[13] The LOI defines "representatives" as officers, directors, employees, agents, stockholders or any other type of representative.  *See* Am. Compl., Ex. H at ¶ 2.  Herman, Denkin, and Lukash, signed the LOI on behalf of DCDC, GrowOpp LLC and Growblox Holdings, Inc., respectively.  *Id.* at 6.  The Amended Counterclaims further allege that Ellins, Denkin, and Bianco owned GrowOpp LLC.  Am. Countercls. ¶ 15.

[14] The LOI clearly applies to DCDC.  However, DCDC is only implicated in Counterclaimants' claims for unjust enrichment and quantum meruit, which are addressed below.

the Amended Counterclaims merely consist of conclusory allegations and therefore fail to state a claim.  Doc. 32 at 13-14.

"[A] [p]artnership results from contract, express or implied."  *Ronis v. Carmine's Broadway Feast, Inc.*, No. 10 CIV. 3355 (TPG), 2012 WL 3929818, at *5 (S.D.N.Y. Sept. 7, 2012) (quoting *Martin v. Peyton*, 246 N.Y. 213, 217, 158 N.E. 77, 78 (1927)) (internal quotation marks omitted).  A partnership contract can be either oral or written.  *Id*. (citing *Missan v. Schoenfeld*, 95 A.D.2d 198, 208, 465 N.Y.S.2d 706, 712 (1983)).  Even in the absence of an explicit agreement, the existence of a partnership may be implied from "the conduct, intention, and relationship between the parties."  *Id*. (quoting *Brodsky v. Stadlen*, 138 A.D.2d 662, 663, 526 N.Y.S.2d 478, 479 (1988)) (internal quotation marks omitted).  Under New York law,[15] a partnership consists of four elements:  (1) "the parties' sharing of profits and losses;" (2) "the parties' joint control and management of the business;" (3) "the contribution by each party of property, financial resources, effort, skill, or knowledge to the business;" and (4) "the parties' intention to be partners."  *St.-Works Dev. LLC v. Richman*, No. 13 CV 774 (VB), 2015 WL 872457, at *4 (S.D.N.Y. Feb. 3, 2015) (internal citation and quotation mark omitted).  Certain factors are more important than others, particularly the "indispensable" quality of a partnership consisting of "a mutual promise or undertaking of the parties to share in the profits of the business *and submit to the burden of making good the losses*."  *Ronis*, 2012 WL 3929818, at *5 (quoting *Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317, 151 N.E.2d 170, 178 (1958)) (emphasis in original).

---

[15] Based on their briefing, the parties agree that New York law applies.  Doc. 32 at 13; Doc. 36 at 12.

Although the Amended Counterclaims only refer to the existence of a partnership, Counterclaimants' papers repeatedly refer to their arrangement as a joint venture. *See* Doc. 36 at 1, 4, 13. Under New York law, partnerships and joint ventures are virtually identical. Doc. 32 at 14 n.9. Indeed, a joint venture is viewed as a "partnership for a limited purpose," and is governed by the same legal rules as partnerships.[16] *Scholastic, Inc. v. Harris*, 259 F.3d 73, 84 (2d Cir. 2001) (internal citations and quotation marks omitted); *see also Turner v. Temptu Inc.*, 586 F. App'x 718, 722 (2d Cir. 2014) (citing *Scholastic* to justify the use of both terms in referring to the same arrangement); *Ely v. Perthuis*, No. 12 CIV. 1078 (DAB), 2013 WL 411348, at *4 (S.D.N.Y. Jan. 29, 2013) ("[A]t times[,] joint venture[s] and partnership[s] have been discussed nearly interchangeably.").

The Amended Counterclaims state that "it was commonly recognized between Herman, Lukash, Ellins, Denkin, and Bianco that they were working together toward their goals as a partnership, in which each was an equal owner, each had joint management and control, each contributed capital, and each was expected to bear any losses." Am. Countercls. ¶ 31. Counterclaimants thoroughly detail the labor and capital that they contributed to the undertaking. *Id.* at ¶¶ 17-21, 30.[17] They claim that this "understanding" was "memorialized" in the PPM,

---

[16] A joint venture consists of: (1) "two or more parties entered an agreement to create an enterprise for profit," (2) "the agreement evidences the parties' mutual intent to be joint venturers," (3) "each party contributed property, financing, skill, knowledge, or effort to the venture," (4) "each party had some degree of joint management control over the venture," and (5) "there was a provision for the sharing of both losses and profits." *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004) (internal citations omitted).

[17] The Amended Counterclaims repeatedly refer to "investments" made by Herman and Lukash in exchange for "notes convertible into shares of DCDC common stock." Am. Countercls. ¶¶ 26, 29. To the extent that Counterclaimants are referring to the promissory notes attached to Plaintiff's Amended Complaint, these are clearly not "investments," but rather loans that required repayment of the principal sum plus interest. *See* Am. Compl., Exs. A-F. However, the Amended Counterclaims also allege that Herman and Lukash "expended several thousand dollars *over and above* the total amount of the notes on the partnership's behalf." Am. Countercls. ¶ 30 (emphasis added).

which stipulates that each of the five individual parties owned an equal number of shares of an entity named "Tumbleweed."  Am. Countercls. ¶ 32; *see also* Fleming Aff., Ex. 1 at HER00004057.  The PPM also identifies all five parties as part of Tumbleweed's "Leadership Team."  Fleming Aff., Ex. 1 at HER00004054.

Although Counterclaimants repeatedly refer to the "Tumbleweed Partnership" in their opposition papers, neither the Amended Counterclaims nor any of the attached documents make any reference to such an entity.  First, "it is well settled that 'calling an organization a partnership does not make it one."  *Ely*, 2013 WL 411348, at *6 (quoting *N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc*., No. 99 CIV. 4643 (LAP), 2000 WL 1290608, at *2 (S.D.N.Y. Sept. 12, 2000)).  Second, the PPM does not purport to "memorialize" a partnership agreement at all, rather, it is wholly concerned with providing investment information about Tumbleweed Holdings, Inc., a *corporate* entity.[18]  Fleming Aff., Ex. 1.  Counterclaimants do not address what impact, if any, the creation of Tumbleweed had on the existence of the alleged partnership.  In the absence of any facts that show that the alleged partners retained their rights vis-à-vis one another, the Court cannot assume that the partnership—to the extent one existed—did not merge into the corporation.[19]

---

[18] Counterclaim-Defendants claim that, after the execution of the LOI, the parties changed the proposed resulting merger entity name from "GrowOpp" to "Tumbleweed."  Doc. 38 at 2.  They claim that the transaction identified in the PPM is the same transaction contemplated by the LOI and note that the PPM does not describe a partnership.  *Id*. at 2-3.  Furthermore, Counterclaim-Defendants maintain that, although the parties drafted a PPM, it was never finalized or executed.  *Id.* at 3.

[19] New York courts have established that "[w]hen the parties intend to merge their entire joint venture [or partnership] agreement, including their rights *inter sese* and the conduct of the business enterprise planned or conducted under the agreement, into the form of a corporation, they are bound by the result and are relegated to their rights as corporate stockholders."  *Sagamore Corp. v. Diamond W. Energy Corp*., 806 F.2d 373, 378 (2d Cir. 1986) (collecting state court decisions).  In other words, the joint venture or partnership agreement itself becomes unenforceable.  *See id*.  Conversely, "when the parties to a joint venture agreement, in forming a corporation to carry out one or more of its objectives, intend to reserve certain rights *inter sese* under their agreement, which do not interfere with or restrict the management of the affairs of the corporation, its exercise of corporate powers, or the

16

The Amended Counterclaims do not allege many of the traditional indicia of a partnership, such as joint liability for debts, shared access to its bank accounts, authority to sign checks on the partnership's behalf, or the filing of partnership tax returns. *Scott v. Rosenthal*, No. 97 CIV. 2143 (LLS), 2001 WL 282712, at *3 (S.D.N.Y. Mar. 22, 2001) (internal citations omitted). Besides Tumbleweed, there is no claim that the individual parties served as officers, directors, or stockholders of the same entity, or otherwise exercised joint control over its day-to-day operations. *See id.* (citing *Bereck v. Meyer*, 222 A.D.2d 243, 243, 635 N.Y.S.2d 15, 16 (1995)). The only element of a partnership that the Amended Counterclaims support with facts is their account of the labor and capital Herman and Lukash dedicated to the undertaking. However, the mere fact that an individual stands to lose the value of his or her services rendered in connection with a collaborative business effort does not transform that person into a partner or joint venturer without more. *Cosy Goose Hellas v. Cosy Goose USA. Ltd.*, 581 F. Supp. 2d 606, 620-21 (S.D.N.Y. 2008) ("[A] putative joint venturer who only stands to lose the value of his or her services rendered in connection with the venture does not submit himself or herself to the liabilities and losses of the venture and thus is not considered a joint venturer.") (citing *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003)).

In sum, the Amended Counterclaims do not state sufficient facts to establish that a partnership or joint venture existed. The PPM itself undercuts Counterclaimants' contention that they intended to form a partnership, as opposed to corporation. Although the Amended

---

rights of third parties doing business with it, these rights being extrinsic to the corporate entity and its operations, such joint venture agreement may be enforced." *Id.* Individuals are effectively permitted to be partners amongst themselves, while operating as a corporation "as to the rest of the world," so long as third parties are not adversely affected by the arrangement and the retained partnership rights are "independent of and extrinsic to the corporate entity[.]" *Id.* at 379 (internal citations omitted).

Counterclaims establish that the parties had a business relationship that involved working together to create a corporation, they do not plead sufficient facts to plausibly claim that a partnership agreement was ever reached.[20]  Therefore, Counterclaimants' request for a declaratory judgment that Herman and Lukash formed a partnership with Ellins, Denkin, and Bianco is dismissed, without prejudice.

### D.  Breach of Fiduciary Duty

Counterclaimants' second cause of action alleges that Counterclaim-Defendants breached their fiduciary duties of care and loyalty to the general partnership and to their partners when they transferred the partnership assets to Signature without informing or obtaining consent from Herman and Lukash.  Am. Countercls. ¶ 49.  Given that Counterclaimants have failed to adequately allege that a partnership existed, *see supra* Part. II.C, or otherwise establish the presence of a fiduciary relationship, their breach of fiduciary of duty claim must also be dismissed.[21]

---

[20] Counterclaimants cite *Antares Mgmt. LLC v. Galt Global Capital, Inc.*, No. 12-CV-6075 (TPG), 2013 WL 1209799, at *1 (S.D.N.Y. Mar. 22, 2013) to argue that they have properly alleged the formation of a partnership. Doc. 36 at 15.  However, the court found that the alleged oral partnership in *Antares* was reflected in a series of writings wherein the parties jointly agreed to manage their venture and to share equally any profits or losses generated from their joint endeavors.  *Antares*, 2013 WL 1209799, at *11.  There are no such writings here.  And, as discussed above, Counterclaimants attempt to characterize the PPM as memorializing the alleged partnership fails.

[21] Counterclaim-Defendants also argue that an oral partnership agreement is terminable at will and that Counterclaimants can only assert a claim for accounting.  Doc. 32 at 15.  Indeed, oral partnership and joint venture agreements spanning an indefinite period of time are terminable at will—essentially "on a moment's notice."  *Ely*, 2013 WL 411348, at *7 (quoting *Foster v. Kovner*, 44 A.D.3d 23, 27, 840 N.Y.S.2d 328, 331 (2007)) (internal quotation marks omitted).  However, "[a]lthough a partner's duties to his copartners may be relaxed in a relationship that looks to the future of a newly dissolved partnership, a partner's duty of good faith and full disclosure continues as to dealings affecting the winding up of the partnership and the proper preservation of partnership assets during that period."  *Ebker v. Tan Jay Int'l Ltd.*, 741 F. Supp. 448, 469 (S.D.N.Y. 1990) *aff'd sub nom. Ebker v. Tan Jay*, 930 F.2d 909 (2d Cir. 1991) (citing *Lavin v. Ehrlich*, 80 Misc. 2d 247, 248, 363 N.Y.S.2d 50, 52 (Sup. Ct. 1974)). Therefore, even though Ellins, Denkin, and Bianco would have been within their right to terminate an oral partnership, they could not conduct the winding down process so as to exclude Herman and Lukash or cause them to suffer losses.  *See id.*

### E.  Quasi-Contract Claims:  Unjust Enrichment and Quantum Meruit[22]

Counterclaim-Defendants contend that Counterclaimants' unjust enrichment and quantum meruit claims should be dismissed because they cannot simultaneously seek damages for those causes of action as well as for breach of fiduciary duty and breach of contract.  Doc. 32 at 15, Doc. 38 at 7.  Counterclaim-Defendants further argue that, since partnerships and joint ventures are terminable at will, Counterclaimants can only assert a claim for accounting in connection with the alleged partnership's termination.  Doc. 32 at 15.  Counterclaimants respond that they are entitled to pursue their unjust enrichment and quantum meruit claims regardless of whether the Amended Counterclaims adequately plead the existence of a partnership.  Doc. 36 at 11.

As a preliminary matter, "[a]t the pleading stage, [a party] is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims."  *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010).  The Federal Rules of Civil Procedure allow parties to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."  Fed. R. Civ. Pro. 8(d)(2).  In the end, "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. Pro. 8(d)(3).  The Second Circuit has gone as far as to state that "even where allegations are not specifically denominated as alternative claims '[Rule 8(d)] offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing  orders

---

[22] Quantum meruit and unjust enrichment do not constitute separate causes of action and may therefore be addressed as a single claim.  *Ashlock v. Slone*, No. 10 CIV. 453 (PAE), 2012 WL 3055775, at *6 (S.D.N.Y. July 26, 2012) (quoting *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir. 2005)). This is because in order to recover on a claim of quantum meruit, a party must prove the existence of unjust enrichment.  *Id*. at n.6.

granting motions to dismiss.'"  *St. John's Univ.*, 757 F. Supp. 2d at 183-84 (quoting *Adler v.
Pataki*, 185 F.3d 35, 41 (2d Cir. 1999)).  Therefore, Counterclaimants are permitted to
simultaneously allege breach of fiduciary duty and breach of contract, while also bringing unjust
enrichment and quantum meruit claims in the alternative.

    In their opposing papers, Counterclaimants maintain that the unjust enrichment, quantum
meruit, and breach of contract claims are separate and apart from the alleged partnership.  Doc.
36 at 11.  The breach of fiduciary duty claim is premised on the alleged transfer of partnership
assets to Signature without the knowledge of Herman or Lukash.  Am. Countercls. ¶ 49.  The
unjust enrichment and quantum meruit claims are based on Herman and Lukash's contributions
to those assets.  *Id*. at ¶¶ 55, 62.  Finally, the breach of contract claim arises from GrowOpp
LLC's alleged failure to comply with the terms of the promissory notes.  *Id*. at ¶ 67.  Even if the
Court had not dismissed Counterclaimants' partnership-based claims, it would be premature for
it to determine that the quasi-contractual claims are redundant and dismiss them on that basis
alone.

    Counterclaim-Defendants also invoke the LOI to argue that Counterclaimants' unjust
enrichment and quantum meruit claims are precluded by the waiver of liability provision.
Doc. 38 at 7.  However, they raised this argument for the first time in their reply papers, thereby
preventing Counterclaimants from offering a response.  "Courts generally do not consider
arguments raised for the first time in a reply brief."  *Bektic-Marrero v. Goldberg*, 850 F. Supp.
2d 418, 432 (S.D.N.Y. 2012) (quoting U*.S. ex rel. Sasaki v. New York Univ. Med. Ctr*., No. 05
CIV. 6163 (LMM) (HBP), 2012 WL 220219, at *7 n.5 (S.D.N.Y. Jan. 25, 2012)).  The Court is
particularly unwilling to consider this argument given the LOI's limited applicability.  *See* Doc.
38 at 7.  The Court has already determined that the LOI's waiver provision does not preclude

claims brought by Herman, Lukash, Ellins, Denkin, and Bianco against one another, or claims brought pursuant to separate agreements.[23]  *See supra* Part II.B.  Therefore, Counterclaim-Defendants have not stated a basis for dismissing the unjust enrichment and quantum meruit claims.[24]

## III.    Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Specifically, Counterclaimants' request for declaratory relief, along with their breach of fiduciary duty claim, is dismissed without prejudice.  The claims for unjust enrichment and quantum meruit survive the instant motion.[25]  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 30.

---

[23] Nonetheless, the unjust enrichment and quantum meruit claims are asserted by all of the Counterclaimants against each Counterclaim-Defendant.  To the extent that DCDC in particular is bringing these claims against GrowOpp LLC, Ellins, Denkin, or Bianco in association with the proposed transaction, the LOI's waiver provision appears to preclude them from doing so.  *See* Am. Compl., Ex. H at ¶ 6.  The Court also notes that the LOI states that each of parties were responsible "for their own costs and expenses incurred by it in connection with the consummation of the proposed Transaction, whether or not the Proposed Transaction shall have been completed."  *Id.* at ¶ 5.  Nonetheless, Counterclaim-Defendants do not cite this provision in their papers.

[24] Counterclaim-Defendants have not otherwise challenged the sufficiency of the Amended Counterclaims' pleadings with respect to the unjust enrichment or quantum meruit claims.

[25] As previously noted, the Court does not read Counterclaim-Defendants' motion as moving to dismiss the breach of contract claim.

Furthermore, the Clerk of the Court is directed to amend the caption of this action to remove all third-party plaintiffs and defendants.  Instead, the caption shall list Digital Creative Development Corporation, GCM Administrative Services, LLC, Strategic Turnaround Equity Partners, LP, Seth M. Lukash, and Gary Herman as Counterclaimants and GrowBlox Sciences Inc., Todd Denkin, Joseph J. Bianco, Tumbleweed Holdings, Inc., Craig Ellins, and GrowOpp, LLC as Counterclaim-Defendants.

The parties are further directed to appear before the Court for a conference on **June 16, 2015 at 10:30 a.m**.

It is SO ORDERED.


Dated:     June 2, 2015
           New York, New York


Edgardo Ramos, U.S.D.J.

22