UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GROWBLOX SCIENCES, INC.,

       Plaintiff,

       -against-

GCM ADMINISTRATIVE SERVICES, LLC,
SETH M. LUKASH, GARY HERMAN, and
STRATEGIC TURNAROUND EQUITY
PARTNERS, L.P. (CAYMAN)

       Defendants.

Docket No. 14 Civ. 2280 (ER)

---

DIGITAL CREATIVE DEVELOPMENT
CORPORATION, GCM ADMINISTRATIVE
SERVICES, LLC, STRATEGIC TURNAROUND
EQUITY PARTNERS, L.P. (CAYMAN),
SETH M. LUKASH, and GARY HERMAN,

       Counterclaimants,

       -against-

GROWBLOX SCIENCES, INC., TODD DENKIN,
JOSEPH J. BIANCO, TUMBLEWEED
HOLDINGS, INC. f/k/a GROWOPP HOLDINGS,
INC., CRAIG ELLINS, and GROWOPP, LLC,

       Counterclaim-Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF COUNTERCLAIMANTS' MOTION
FOR LEAVE TO SERVE AND FILE SECOND AMENDED COUNTERCLAIMS**

OLSHAN FROME WOLOSKY LLP
*Attorneys for Defendants and
Counterclaimants*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

Table of Contents

Page

Preliminary Statement.................................................................................................1

Facts ............................................................................................................................2

    The Parties ............................................................................................................2

    The Cannabis Business ........................................................................................2

    The Letter of Intent .............................................................................................3

    The Partnership ...................................................................................................3

    Ellins, Denkin, and Bianco Misappropriate the Partnership Assets ...................7

Procedural History ......................................................................................................9

    The Proposed Second Amended Counterclaims.................................................10

Argument ...................................................................................................................11

    I      THE COURT SHOULD GRANT COUNTERCLAIMANTS LEAVE TO
           AMEND................................................................................................11

           A.     Leave to Amend Should Be Freely Given .................................11

           B.     The Proposed Second Amended Counterclaims Adequately Allege
                the Existence of an Oral Partnership and/or a Joint Venture ...................11

           C.     The Proposed Second Amended Counterclaims State a Claim for
                Breach of Fiduciary Duty and/or Aiding and Abetting Thereof...............20

           D.     The Proposed Second Amended Counterclaims State a Claim for
                Declaratory Relief...................................................................................24

           E.     The Unjust Enrichment, Quantum Meruit, and  Breach of Contract
                Claims are Not at Issue in This Motion ..................................................24

Conclusion ................................................................................................................25

Table of Authorities

Page

CASES

*Anderson v. Nat'l Producing Co.*,
    253 F.2d 834 (2d Cir. 1958)..................................................................................13

*Antares Mgmt. LLC v. Galt Global Capital, Inc.*,
    No. 12-CV-6075 TPG, 2013 WL 1209799 (S.D.N.Y. Mar. 22, 2013) ...............................21

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010).........................................................................11, 15, 19

*Boston v. Taconic Mgmt.*,
    No. 12-CV-4077 ER, 2014 WL 4184751 (S.D.N.Y. Aug. 22, 2014)....................................10

*Brown v. Cara*,
    420 F.3d 148 (2d Cir. 2005).....................................................................................13

*Burde v. C. I. R.*,
    352 F.2d 995 (2d Cir. 1965)................................................................................13, 16

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    411 F.3d 384 (2d Cir. 2005).....................................................................................23

*Ebker v. Tan Jay Int'l Ltd.*,
    741 F. Supp. 448 (S.D.N.Y. 1990) *aff'd sub nom. Ebker v. Tan Jay*, 930 F.2d
    909 (2d Cir. 1991)...................................................................................................20

*In re Cohen*,
    422 B.R. 350 (E.D.N.Y. 2010) ..................................................................................12

*In re MF Global Holdings Ltd. Inv. Litig.*,
    998 F. Supp. 2d 157 (S.D.N.Y. 2014).........................................................................20

*In re Prudential Lines Inc.*,
    158 F.3d 65 (2d Cir. 1998).......................................................................................23

*Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*,
    472 F. Supp. 2d 544 (S.D.N.Y. 2007).........................................................................20

*Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*,
    909 F.2d 698 (2d Cir. 1990)......................................................................................11

*Maillet v. Frontpoint Parties, L.L.C.*,
    No. 02 CIV. 7865 (GBD), 2003 WL 21355218 (S.D.N.Y. June 10, 2003)............................20

<u>Table of Authorities</u>
(continued)

<u>Page</u>

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270 (1941)...............................................................................................23

*Matlins v. Sargent*,
  No. 86 CIV. 0370 (MJL), 1991 WL 79219 (S.D.N.Y. May 7, 1991) ........................13, 14, 15

*Ramirez v. Goldberg*,
  439 N.Y.S.2d 959 (1981)........................................................................................13

*Ronis v. Carmine's Broadway Feast, Inc.*,
  No. 10 CIV. 3355 TPG, 2012 WL 3929818 (S.D.N.Y. Sept. 7, 2012) ............................11, 12

*Scholastic, Inc. v. Harris*,
  259 F.3d 73 (2d Cir. 2001).......................................................................................11

*SCS Commc'ns, Inc. v. Herrick Co.*,
  360 F.3d 329 (2d Cir. 2004)................................................................................12, 16, 17, 21

*Shore Parkway Associates v. United Artists Theater Circuit, Inc.*,
  No. 92 CIV 8252 (JFK), 1993 WL 361646 (S.D.N.Y. Sept. 14, 1993) ...........................20, 21

*Sriraman v. Patel*,
  761 F. Supp. 2d 7 (E.D.N.Y. 2011) ..........................................................................22

*Tenney v. Ins. Co. of N. Am.*,
  409 F. Supp. 746 (S.D.N.Y. 1975)............................................................................13

*Tucker Anthony Realty Corp. v. Schlesinger*,
  888 F.2d 969 (2d Cir. 1989).....................................................................................20

*Williams v. Citigroup Inc.*,
  659 F.3d 208 (2d Cir. 2011).....................................................................................10

iii

Counterclaimants Digital Creative Development Corporation, GCM Administrative Services, LLC, Strategic Turnaround Equity Partners, LP (Cayman), Seth M. Lukash and Gary Herman, by their attorneys Olshan Frome Wolosky LLP, respectfully submit this memorandum of law in support of their motion to amend, pursuant to Fed. R. Civ. P. 15(a).

## Preliminary Statement

This action arises from a brazen taking by Counterclaim Defendants of valuable assets jointly developed and owned by Herman and Lukash.  In February 2013, Counterclaimants Herman and Lukash and Counterclaim Defendants Ellins, Denkin, and Bianco began working on a venture to develop a business to produce and sell certain legal cannabis products.  As part of their collaboration, entities under the individuals' control entered into a Letter of Intent in July 2013, outlining the structure of a proposed transaction to be consummated in furtherance of their venture.  After the Letter of Intent expired by its own terms, the five individuals decided to continue their collaboration, agreeing to share equally in the profits and also to bear the risk of loss if the venture failed.  Through these joint efforts, Herman, Lukash, Ellins, Denkin, and Bianco formed a general partnership and/or joint ventures in which each were equal partners/co-venturers.

The general partnership/venture held valuable assets, developed through the collaboration of its five partners, including the time, expertise, and financial resources of Herman and Lukash. In March 2014, however, Ellins, Denkin, and Bianco misappropriated the assets jointly developed and owned in part by Herman and Lukash, selling them to counterclaim defendant GrowBlox Sciences, Inc., and receiving shares worth millions of dollars.  Herman and Lukash received nothing.

## Facts

The below facts are taken from the proposed Second Amended Counterclaims, annexed as Exhibit 1 to the accompanying Declaration of Thomas J. Fleming, dated July 1, 2015.

### The Parties

The Counterclaimants in this action are Gary Herman, Seth Lukash, Digital Creative Development Corporation ("DCDC"), GCM Administrative Services, LLC ("GCM"), and Strategic Turnaround Equity Parties, L.P. ("Cayman") ("STEP"). DCDC[1] is a publicly-traded Utah corporation of which Herman is the CEO and President, and of which Herman and Lukash are Directors. Herman is also the managing member and owner of GCM, and a manager of STEP. (2d Am. CC ¶¶ 4-8).

The Counterclaim Defendants in this action are Craig Ellins, Todd Denkin, Joseph Bianco, GrowOpp, LLC ("GrowOpp"), Tumbleweed Holdings, Inc. ("Tumbleweed Holdings"), and GrowBlox Sciences, Inc. ("GrowBlox Sciences"). GrowOpp is a Nevada company owned by Ellins, Denkin, and Bianco; Tumbleweed Holdings is a Delaware company that was formerly known as GrowOpp Holdings, Inc. ("GrowOpp Holdings"); and GrowBlox Sciences is a publicly-traded Delaware corporation. (*Id.* at ¶¶ 9-14).

### The Cannabis Business

In February 2013, Counterclaimants Herman and Lukash began working on a business venture with Counterclaim Defendants Ellins, Denkin, and Bianco (collectively, the "Five Individuals") to design, produce, and sell certain legal cannabis products (the "Cannabis Business"). (*Id.* at ¶ 15). Specifically, the Five Individuals planned to create a business to sell products that would consistently produce pesticide-free medicinal-grade cannabis, transform it

---

[1] In May 2014, DCDC changed its name to Tumbleweed Holdings, Inc., an entity distinct from the Tumbleweed Holdings, Inc. that is named as a counterclaim defendant.

into ingestible and topical products, and distribute it in compliance with state and local guidelines and laws.  The main product was to be an indoor hydroponic controlled-environment agricultural growing chamber that later came to be known as "GrowBLOX."  (*Id.* at ¶¶ 15, 21).

<u>The Letter of Intent</u>

By July 2013, the Five Individuals had come up with a proposed structure to launch the Cannabis Business as a public company.  This structure was memorialized in a non-binding letter of intent dated July 31, 2013 (the "LOI").  The LOI had three parties:  (a) DCDC, the public shell controlled by Herman; (b) GrowOpp, a thinly-capitalized LLC used by Denkin for the Business; and (c) GrowBlox Holdings, Inc. ("GrowBlox Holdings"), another entity formed for the Business.  As set forth in the LOI, the plan was for DCDC to acquire GrowOpp and GrowBlox Holdings, change its name to GrowBlox Holdings, re-incorporate in Delaware, and then issue 60% of its shares to the Five Individuals in equal amounts.  The remaining 40% was to go to new investors and existing shareholders.  (*Id.* at ¶ 22).

The LOI provided for automatic termination 90 days after signing.  Thus, the LOI expired by its own terms on October 29, 2013.  (*Id.* at ¶ 25).

<u>The Partnership</u>

Following the expiration of the LOI, and continuing for at least four months thereafter, the Five Individuals chose to work together to develop the Cannabis Business, forming a *de facto* partnership and/or joint venture in which each was an equal owner, each had joint management and control, each contributed capital, and each was expected to bear any losses (the "Partnership").  (*Id.* at ¶ 26).

From at least October 29, 2013 through early March 2014, the Five Individuals worked collaboratively to develop the Cannabis Business.  (*Id.* at ¶ 21).  From the outset, it was understood and agreed that each of the Five Individuals would, in exchange for their efforts,

acquire an equal 20% interest in the resulting Business, and would thus share equally in its profits.  Indeed, in an early in-person meeting, Lukash specifically stated to Herman, Ellins, Denkin, and Bianco that they would each be 20% owners, and everyone expressly agreed.  (*Id.* at ¶ 27).

From at least October 29, 2013 through early March 2014, each of the Five Individuals contributed capital, skills, time, and other resources to further the Cannabis Business.  Because of their prior experience in the legal cannabis sector and with hydroponic growing devices, Ellins and Denkin took the lead on the "operations" side of the Business, including developing the GrowBLOX product and related products to support the legal production and use of cannabis. Lukash also helped to develop the GrowBLOX product, and through his efforts helped to transform from a rudimentary prototype built out of wood to a commercially-marketable product complete with sophisticated technologies such as an LED lighting system, a computerized control system, and a remote monitoring system.  Herman and Lukash also worked closely with Ellins, Denkin, and Bianco to, among other things, create a business plan, create the pro-forma financials, develop the corporate website, create investor presentations, raise financing, and on other business development related responsibilities.  Herman, meanwhile, also took all necessary steps to deliver DCDC as a "clean" public shell that could be used to acquire the Cannabis Business.  (*Id.* at ¶¶ 28-31).

In addition to their time and expertise, Herman and Lukash provided more than $25,000 to support the Five Individuals' ongoing efforts to develop the  Business, and arranged $75,000 of financing to be provided by GCM and STEP.  (*Id.* at ¶ 32).  These funds, along with funds provided by Ellins, Denkin, and Bianco, were used to, among other things, retain various professionals who provided services and developed assets for the Business.  (*Id.* at ¶ 33).

Throughout the time that they worked together, the Five Individuals kept in regular contact with one another, participating in numerous meetings and conference calls and sending regular emails and texts to update each other on the status of their efforts to develop the Business. At one point, the Five Individuals even scheduled "standing" conference calls three times per week. The Five Individuals also routinely consulted one another on all decisions affecting the Business, from changing the name of the Business to the style of the logo, and made important decisions affecting the Business jointly. (*Id.* at ¶ 34).

The Five Individuals all understood that they would not be compensated for their time unless and until the Business was profitable, and also agreed to contribute funds to support the Business until such time as they were able to raise sufficient funds from outside investors. Herman and Lukash were not compensated in any way for the time spent working on the Cannabis Business. (*Id.* at ¶ 35).

Through their contributions of expertise, time, and money, Herman and Lukash helped to develop a variety of valuable assets for the Partnership. These assets included the GrowBLOX product and associated drawings and renderings; business plans; investor presentations; a website; a logo and other digital artwork; various intellectual property including the "GrowBLOX" name; research relating to the cannabis market, the hydroponics market, government regulation of cannabis, and other topics; and other concepts, plans, and know-how relating to cannabis and hydroponics (the "Partnership Assets"). (*Id.* at ¶ 37).

The Five Individuals' intent to be partners was evidenced in a variety of ways. Among other things, they repeatedly referred to themselves as partners in various emails and conversations, and third parties understood them to be partners. Denkin also created email accounts for each of the Five Individuals using the domain name @growopp.com. "GrowOpp"

was the name that the Five Individuals were using at that time for the Business; later, when they discovered that "GrowOp" was already being used by a public company, the Five Individuals changed the name to "Tumbleweed."  Additionally, the Five Individuals opened at least two bank accounts into which they contributed funds in furtherance of the Business.  The payments made by Herman and Lukash were sent to a "GrowOpp" bank account or to the various professionals directly.  The Five Individuals, moreover, repeatedly presented themselves as jointly associated with GrowOpp and/or Tumbleweed Holdings.  (*Id.* at ¶ 38).

The Five Individuals' status as equal partners and equal owners of the Partnership Assets was reflected in several contemporaneous documents, including investor materials describing the Five Individuals as equal owners of the Partnership assets and as equal owners of the public entity into which these assets were going to be transferred.  For example, following the expiration of the LOI, the Five Individuals contemplated that they would transfer the assets of the Partnership into a capitalized public company, each receiving equity in the public company vehicle.  Consistent with this partnership plan, counsel to GrowOpp prepared a Private Placement Memorandum for Tumbleweed Holdings, dated December 15, 2013 (the "PPM"). Even though Tumbleweed Holdings then had no assets and had not issued shares, the PPM described Tumbleweed Holdings as the owner of the Partnership's assets, and stated that "[a]n aggregate of 13,714,350 shares of Common Stock of the [Tumbleweed Holdings] … are currently outstanding and are owned in equal amounts by Gary Herman, Seth Lukash, Craig Ellins, Todd Denkin, and Joseph J. Bianco…."  (*Id.* at ¶¶ 39-45).

Notwithstanding the statements in the PPM, Tumbleweed Holdings was not, and never was, an operational entity.  (2d. Am. CC ¶ 41).  Thus, although the PPM states that Tumbleweed Holdings had 13,714,350 shares outstanding, in fact, no shares were ever issued to anyone and

the Five Individuals never became equal owners of this entity, or any other entity.  Likewise, although the PPM stated that the Five Individuals were then serving in various executive-level positions at Tumbleweed Holdings, in fact, neither officers nor directors were appointed.  (*Id.* at 41).  Rather, as explained below, the Partnership's plan never occurred because Ellins, Denkin, and Bianco misappropriated the Partnership Assets and the opportunity to participate in the Cannabis Business.

The Five Individuals again affirmed their status as equal partners on December 30, 2013.  On that day, Lukash wrote to Ellins, Denkin, and Bianco, stating that "[i]t has been our [his and Herman's] understanding we were all equal interest holders (20% each)."  Later that day, Denkin confirmed that Lukash's understanding was correct, responding "OK."  Neither Ellins nor Bianco ever told Lukash or Herman that such understanding was incorrect.  (*Id.* at ¶ 46).

<u>Ellins, Denkin, and Bianco Misappropriate the Partnership Assets</u>

Herman and Lukash continued to dedicate their time, efforts, and resources to develop the Cannabis Business through early March 2014.  Through these efforts, Herman and Lukash helped transform what was essentially a concept for a product in Ellins's mind into a viable business with a commercially-marketable product and complete or substantially complete business plan, financials, investor presentations, website, and all other assets and materials relevant to launching a new business.  (*Id.* at ¶ 47).

Throughout the time that they were working to develop and launch the Cannabis Business, Herman and Lukash believed that Ellins, Denkin, and Bianco were doing the same.  Indeed, the Five Individuals continued to exchange emails, participate in phone calls, and hold meetings to discuss the Business through February and early March 2014.  Ellins, Denkin, and Bianco also continued to work on the investor documents, continued to send Herman and Lukash

information about the GrowBLOX product and other assets, and continued to seek Herman's and Lukash's input on a variety of Business-related topics.  (*Id.* at ¶ 48).

Unbeknownst to Herman and Lukash, however, by at least January 2014, Ellins, with the knowledge, consent, and assistance of Denkin and Bianco, had begun to negotiate a sale of the Partnership Assets to GrowBlox Sciences, then known as Signature.  (*Id.* at ¶ 49).

On March 13, 2014, Ellins entered into an Asset Assignment, Acquisition and Professional Association Agreement with GrowBlox Sciences (the "Asset Sale Agreement"), which was filed with the SEC on March 19, 2014.  Pursuant to the Asset Sale Agreement, Ellins purported to sell most, if not all, of the assets that were developed by Herman and Lukash for the Partnership.  Indeed, the Asset Sale Agreement specifically describes the assets sold as those "conceived, owned in whole or in part, or developed by Mr. Ellins *or his associates*."  Such associates included Herman and Lukash.  (*Id.* at ¶¶ 50, 51).

For example, the website sold to GrowBlox Sciences was the *exact same* website that had been developed for the Partnership, except that the name was changed from Tumbleweed to GrowBlox Sciences, and Herman and Lukash were removed from the list of people on the team. Likewise, the drawings and digital artwork sold to GrowBlox Sciences were the exact same drawings and artwork that had been developed for the Partnership, except that Denkin instructed the engineer who created them to replace the Tumbleweed logo on the drawings with the GrowBlox Sciences logo.  (*Id.* at ¶¶ 52-55).

In exchange for selling the Partnership Assets to GrowBlox Sciences, Ellins received 12,500,000 shares of GrowBlox Sciences common stock (the "GrowBlox Shares"), with the first 4,500,000 shares to be issued upon execution of the Asset Sale Agreement, the second 4,000,000 shares to be issued upon the completion of certain fundraising, and the last 4,000,000 shares to

be issued upon the filing of certain provisional patent applications.   Ellins also entered into an employment agreement with GrowBlox Sciences and became its CEO.  As compensation, Ellins received a starting salary of $147,000 per year, as well as an additional 1,000,000 GrowBlox Shares per year for three years.  (*Id.* at ¶¶ 56-57).

Both Denkin and Bianco participated in, assisted with, and consented to the sale of the Partnership Assets to GrowBlox Sciences.  For example, both Denkin and Bianco provided Ellins with lists of assets to include in the sale, and gave Ellins their consent to sell the assets.  In exchange for his assistance with the sale, Ellins transferred at least 980,000 – and perhaps as many as 2 million – GrowBlox Shares to Bianco.  (*Id.* at ¶ 59).

None of Ellins, Denkin, or Bianco ever informed Herman or Lukash of their plans to sell the Partnership Assets to GrowBlox Sciences.  Rather, Herman and Lukash learned of the sale after GrowBlox Sciences filed an 8-K announcing the sale and annexing the Asset Sale Agreement.  (*Id.* at ¶ 60).

Herman and Lukash did not give permission to Ellins, Denkin, or Bianco to sell the Partnership Assets.  To date, Herman and Lukash have never been compensated for their work for the Partnership or for developing the Partnership Assets that were sold to GrowBlox Sciences.  (*Id.* at ¶ 61).

## **Procedural History**

GrowBlox Sciences commenced this action on April 1, 2014, and filed a First Amended Complaint on April 9, 2014.  (Dkt. No. 3).  The Amended Complaint asserts a single count for declaratory relief, seeking a declaration that Herman, Lukash, GCM, and STEP are not entitled to shares of GrowBlox Sciences.

9

On May 9, 2014, Counterclaimants filed an Answer, Counterclaims, and Third Party Claims.  (Dkt. No. 11).  Counterclaim Defendants filed a Reply to the Counterclaims and an Answer to the Third-Party Claims on June 27, 2014.  (Dkt. No. 14).

On November 10, 2014, Counterclaimants filed an Answer and Amended and Supplemental Counterclaims and Third Party Claims, asserting claims for declaratory relief, breach of fiduciary duty, unjust enrichment, quantum meruit, and breach of contract.  On January 7, 2015, Counterclaim Defendants moved to dismiss.  By Order dated June 2, 2015, the Court denied the motion with respect to the claims for unjust enrichment, quantum meruit, and breach of contract, but granted the motion with respect to the declaratory judgment and breach of fiduciary duty claims, dismissing those claims without prejudice to replead.  (Dkt. No. 44).

On June 16, 2015, the parties attended a conference before the Court, and both sides expressed a desire to file amended pleadings.  The Court granted permission for both sides to seek leave to amend.

### The Proposed Second Amended Counterclaims

The proposed Second Amended Counterclaims assert six counterclaims for relief, only three of which are at issue in this motion to amend.  In the first counterclaim, Herman and Lukash seek a declaration that they were equal partners with Ellins, Denkin, and Bianco in the Partnership, and that the assets sold to GrowBlox Sciences were rightful assets of the Partnership.  In the second counterclaim, Herman and Lukash allege that Ellins, Denkin, and Bianco breached the fiduciary duties they owed as partners and/or joint venturers by selling and/or enabling the sale of the Partnership Assets to GrowBlox Sciences.  In the third counterclaim, Herman and Lukash allege, in the alternative, that Denkin and Bianco aided and abetted Ellins's breach of fiduciary duty.

The remaining counterclaims are not at issue in this motion.  In the fourth and fifth counterclaims for unjust enrichment and *quantum meruit*, Herman and Lukash seek to recover the fair value of the services and assets provided to Counterclaim Defendants.  Both of these claims were sustained by the Court  in its June 2, 2015 Order.  In the sixth and final counterclaim, GCM and STEP seek to recover on certain promissory notes pursuant to which they invested $75,000 in GrowOpp, as well as their attorneys' fees as provided in the notes.  The breach of contract claim was not the subject of Counterclaim Defendants' earlier motion to dismiss, and remains in the case.

## Argument

### I

### THE COURT SHOULD GRANT COUNTERCLAIMANTS LEAVE TO AMEND

A.    Leave to Amend Should Be Freely Given

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party may amend its pleading with leave of the Court, and that "[t]he court should freely give leave when justice so requires."  F.R.C.P. 15(a)(2).  The standard is a "permissive" one that is "consistent with [the Second Circuit's] strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (citation omitted).  Thus, "a court should allow leave to amend a pleading unless the non-moving party can establish prejudice or bad faith."  *Boston v. Taconic Mgmt.*, No. 12-CV-4077 ER, 2014 WL 4184751, at *1-2 (S.D.N.Y. Aug. 22, 2014) (citation omitted).

B.    The Proposed Second Amended Counterclaims Adequately Allege
      the Existence of an Oral Partnership and/or a Joint Venture

The counterclaims for declaratory relief, breach of fiduciary duty, and aiding and abetting breach of fiduciary are based on the existence of a partnership and/or joint venture between the

11

Five Individuals.  Thus, a threshold issues is whether Counterclaimants have adequately alleged the existence of a partnership and/or joint venture.  They have, for the reasons explained below.

"A partnership is an association of two or more persons to carry on as co-owners of a business for profit."  *Ronis v. Carmine's Broadway Feast, Inc.*, No. 10 CIV. 3355 TPG, 2012 WL 3929818, at *5 (S.D.N.Y. Sept. 7, 2012); *see also* N.Y. Partnership Law § 10.  "[A] joint venture is essentially a partnership for a limited purpose."  *Scholastic, Inc. v. Harris*, 259 F.3d 73, 84 (2d Cir. 2001).  Thus, "[u]nder New York law joint ventures are governed by the same legal rules as partnerships."  *Id.*

"Adequately alleging a partnership requires showing four elements:  (1) the parties' sharing of profits and losses; (2) the parties' joint control and management of the business; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge to the business; and (4) the parties' intention to be partners."  *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403-04 (S.D.N.Y. 2010).  The elements to form a joint venture are substantially the same:  (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses.  *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990).

It is well settled that "[a] contract to form a partnership can be written or oral."  *Ronis*, 2012 WL 3929818, at *5.  Thus, "even when no explicit agreement sets forth the terms of a partnership, a partnership may be implied from the conduct, intention, and relationship between the parties."  *Id.* (citation omitted).  For example, "[t]he receipt by a person of a share of the

profits of a business is prima facie evidence that he is a partner in the business."   N.Y. Partnership Law § 11.   Joint venture agreements may likewise be made orally.   *See In re Cohen*, 422 B.R. 350, 377 (E.D.N.Y. 2010) ("Joint ventures need not be evidenced by a written agreement; they may be created by an oral agreement between the parties.").

Here, Counterclaimants have adequately pled each of the elements necessary to establish the existence of an oral partnership between Herman, Lukash, Ellins, Denkin, and Bianco.

*First*, the proposed Second Amended Counterclaims expressly allege that "Herman, Lukash, Ellins, Denkin, and Bianco each agreed to, and in fact did, share in profits and losses of the Cannabis Business."   (2d. Am. CC ¶ 65).   As described in the pleading, the Five Individuals each understood that the sole form of compensation that they would receive for their contributions of money, efforts, skills, and resources was from the Business if and when it was profitable.   Indeed, Herman and Lukash worked for more than twelve months to develop the Business without receiving any compensation for their contributions, and made financial contributions to the Business that were never repaid.   Through their expenditures of service, expertise, and capital, Herman and Lukash bore the risk of financial loss in the Partnership.   (*Id.* at ¶¶ 35, 36).

Additionally, as set forth in the pleading, the fact that the Five Individuals expressly agreed that they were each equal 20% owners of the Cannabis Business meant that they each shared equally in the Business's profits and losses.   *See SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d 329, 342 (2d Cir. 2004) (parties formed joint venture to acquire a business; "sharing of profits and losses" was established by "[t]he anticipated equal ownership" of the to-be-acquired business); *see also Brown v. Cara*, 420 F.3d 148, 160 (2d Cir. 2005) (defendants' argument that "joint ownership is sufficient to demonstrate an agreement to share losses … would be

compelling" if the parties' agreement was to equally own contemplated real estate development project); *Burde v. C. I. R.*, 352 F.2d 995, 1002 (2d Cir. 1965) (parties' plan to develop and sell a product and then "divide the proceeds of sale into three equal parts" supported conclusion that they formed a partnership).

The Second Circuit, moreover, has held that an "agreement to share losses may be inferred where all of the other elements of a partnership are present," as they are here. *Anderson v. Nat'l Producing Co.*, 253 F.2d 834, 837-38 (2d Cir. 1958) ("the absence of an express agreement to share losses is not fatal" to plaintiff's claim).[2]

*Second*, the proposed Second Amended Counterclaims expressly allege that "Herman, Lukash, Ellins, Denkin, and Bianco each agreed to, and in fact did, exercise joint control and management of the Cannabis Business." (2d. Am. CC ¶ 66). The pleading also sets forth ample facts to support this allegation. For example, it alleges that important decisions relating to the Business, such as changing the name of the Business and selecting a logo, were made jointly. (*Id.* at ¶ 34). These allegations adequately evidence that each of the Five Individuals "had a voice in the management of the [] Partnership." *Matlins*, 1991 WL 79219, at *5.

The Five Individuals' sharing of joint control and management of the Business is also reflected in their agreement to share in the joint management and control of the public entity that

---

[2] The Second Circuit has also instructed that "no single factor is controlling." *Burde*, 352 F.2d at 1002. Many cases, moreover, have rejected the notion "that participating in the sharing of [] profits and losses is an indispensible requirement without which [one] cannot be said to be a partner." *Matlins v. Sargent*, No. 86 CIV. 0370 (MJL), 1991 WL 79219, at *3 (S.D.N.Y. May 7, 1991). In *Matlins*, Judge Lowe explained that the four factors that determine the existence of a partnership were first laid out in *Tenney v. Ins. Co. of N. Am.*, 409 F. Supp. 746, 748-49 (S.D.N.Y. 1975). He noted that, in that case, the "court stated that profit and loss sharing is an important factor in determining whether an individual is part of a partnership, but did not hold that it is an 'indispensible' factor in finding the existence of a partnership." *Matlins*, 1991 WL 79219, at *3 (emphasis added). He further noted that "there are numerous cases that follow *Tenney*'s analysis and declare that sharing of profits and losses is merely one factor of many in determining the existence of a partnership." *Id.* (collecting cases). Most significantly, Judge Lowe explained that the Court of Appeals in *Ramirez v. Goldberg*, 439 N.Y.S.2d 959 (1981) "explicitly held that all elements of a relationship must be considered in determining whether a partnership existed." *Id.* Thus, Judge Lowe expressly "adopt[ed] the position of the *Tenney* and *Ramirez* courts and h[e]ld that all factors need to be considered when determining the existence of a partnership." *Id.*

was to acquire the assets of the Partnership. Thus, the pleading alleges that the Five Individuals agreed that Lukash was to be the Chief Executive Officer, Chief Operating Officer, and a Board Member of the entity used to acquire the Partnership Assets; Herman was to be a Board Member; Denkin was to be the Vice President of Marketing and Sales; Ellins was to be a Board Member; and Bianco was to be the Business and Acquisition Advisor. (2d Am. CC ¶ 40).

*Third*, the proposed Second Amended Counterclaims allege in detail the specific contributions of property, financial resources, effort, skill, and knowledge that each of the Five Individuals contributed to the Cannabis Business. It expressly alleges that each of the Five Individuals contributed capital to the Business, including an approximately $25,000 contribution by Herman and Lukash. *See Matlins*, 1991 WL 79219, at *4 (defendant's "$3500 capital contribution … bolsters the presumption of partnership"). In addition to capital, the pleading describes how Ellins and Denkin took the lead on the operations side of the Business and to develop the GrowBLOX product, while Herman, Lukash, and Bianco focused on the business and financial side of the Business. Specifically, Lukash contributed his 30-years' experience as a Chief Executive Officer and Chief Operating Officer of various publicly-traded and private technology and software companies, as well as his experience in manufacturing, industrial design, marketing, business strategy, and financial reporting. Herman also contributed his prior financial and business experience to the Business, and both Herman and Lukash used their skills to help prepare the business plan, investor presentations, corporate website, and other materials to launch the Business and raise money from outside investors. The pleading also alleges that Lukash used his experience to help develop the GrowBLOX system into a commercially-marketable product, and that Herman worked to deliver a "clean" public shell that could be used

to acquire the Business and raise capital, and used his association with a broker-dealer to assist with fundraising.  (2d Am. CC ¶¶ 28-31).

*Finally*, the proposed Second Amended Counterclaims also alleges that the Five Individuals "each intended to be equal partners and/or joint venturers."  (2d Am. CC ¶ 68).  This intent is manifested in several ways.  Among other things, the Five Individuals agreed from the outset to each be 20% owners of the Cannabis Business and to share in its profits.  (*Id.* at ¶ 27).  Moreover, throughout the time that they worked together, the Five Individuals repeatedly referred to themselves as partners, and third parties understood them to be partners.  Furthermore, Denkin created email accounts for each of the Five Individuals using the domain name @growopp.com, with "GrowOpp" referring to the working name of the Business before it was changed to "Tumbleweed."  *See Matlins*, 1991 WL 79219, at *4 (defendant "manifested his intent [to be a partner of SAV] through his use SAV letterhead and business cards).  The Five Individuals also opened at least two bank accounts into which they deposited funds in furtherance of the Business.  (2d Am. CC ¶ 38).

The Five Individuals further manifested their intent to be partners by presenting themselves as jointly associated with the Cannabis Business, including by preparing and distributing investor presentations, business plans, and other materials describing themselves as the principals of the Business and the owners of the various assets belonging to the Partnership.  *See Anwar*, 728 F. Supp. 2d at 404 (plaintiffs adequately alleged existence of a partnership where, among other things, "[t]he partners [] prepared and disseminated the Placement Memos and other materials given to investors," which "portrayed [defendant] as a partnership by describing the billions of dollars of assets it has managed, its existence since 1983 and its management of assets pooled into it").

16

The proposed Second Amended Counterclaims also adequately alleges the existence of a joint venture among Herman, Lukash, Ellins, Denkin, and Bianco. The pleading explains that the Five Individuals entered into a specific agreement to develop and launch the Cannabis Business, a for-profit enterprise to produce pesticide-free medicinal-grade cannabis, transform it into ingestible and topical products, and distribute it in compliance with state and local guidelines and laws. A feature of the specific joint venture agreement also included the Five Individuals' plan to transfer the assets of the joint venture to a capitalized public company, at which point each would receive equal payment for the assets in the form of equal shares in the entity. *See Burde v. C. I. R.*, 352 F.2d 995, 1002 (2d Cir. 1965) (evidence "plainly demonstrated that [partners] conducted an enterprise for a profit [as] [i]t was their intention to develop [a bath oil] formula until it was commercially practicable, sell it to a manufacturing concern, and divide the proceeds of sale into three equal parts.").

The Five Individuals' status as equal partners/venturers and equal owners of the Partnership Assets was reflected in several contemporaneous documents. For example, after the LOI expired, the Five Individuals contemplated that they would transfer the assets of the Partnership into a capitalized public company, each receiving equity in the public company vehicle. (*Id.* at ¶ 39). Thus, even though Tumbleweed Holdings then had no assets and had not issued shares, the PPM described Tumbleweed Holdings as the owner of the Partnership's assets, and stated that its outstanding shares "are owned in equal amounts by Gary Herman, Seth Lukash, Craig Ellins, Todd Denkin, and Joseph J. Bianco…." (*Id.* at ¶ 39). Likewise, even though no directors or officers of Tumbleweed Holdings had been appointed, the PPM also stated, in a section entitled "Our Leadership Team," the executive-level roles that each of the Five Individuals had in Tumbleweed Holdings. (*Id.* at ¶ 40).

17

The Five Individuals again affirmed their status as equal partners in an email dated December 30, 2013.  On that date, Lukash wrote to Ellins, Denkin, and Bianco, stating that "[i]t has been our [his and Herman's] understanding we were all equal interest holders (20% each)." Later that day, Denkin confirmed that Lukash's understanding was correct, responding "OK." Neither Ellins nor Bianco ever told Lukash or Herman that such understanding was incorrect. (*Id.* at ¶ 46).

Notwithstanding the statements in the PPM, Tumbleweed Holdings was not, and never was, an operational entity.  (2d. Am. CC ¶ 41).  Thus, although the PPM states that Tumbleweed Holdings had 13,714,350 shares outstanding, in fact, no shares were ever issued to anyone and the Five Individuals never became equal owners of this entity, or any other entity.  Likewise, although the PPM stated that the Five Individuals were then serving in various executive-level positions at Tumbleweed Holdings, in fact, neither officers nor directors were appointed.  (*Id.* at 41).

Tumbleweed Holdings was a proxy for the Partnership and its Assets.  The Five Individuals understood that they then had an equal stake in the Cannabis Business that would be continued through the capital-raising process as equal ownership in whatever entity was ultimately utilized to launch the Business, rather than any specific entity or entities, including Tumbleweed Holdings.  The Five Individuals thus placed their trust and confidence in each other rather than in the various corporate vehicles.  The description in the PPM reflected the then-current reality as to the joint operation of the Partnership and the plan at that time to transfer the assets of the Partnership into a capitalized public company such as Tumbleweed Holdings, in return for which each of the five partners would receive equal equity in the public company vehicle.  Indeed, only the Partnership, holding the Partnership Assets, could fulfill the assurances

provided to investors in the PPM.  (*Id.* at ¶ 42).  The Partnership's plan, however, never occurred because Ellins, Denkin, and Bianco misappropriated the Partnership Assets and the opportunity to participate in the Cannabis Business.

The Second Circuit's opinion in *SCS Commc'ns* is instructive.   There, the plaintiff, Herrick, alleged that it had entered into a joint venture agreement with defendants SCS and TOG to jointly acquire the business of an entity known as The Orleander Group. *Id.*, 360 F.3d at 339. Specifically, the parties' agreement stated that, if they could "arrange for the acquisition and financing of Orleander, they would form an entity … to complete the acquisition," and that Herrick, TOG, and SCS "will be equal owners" of the acquisition entity.  *Id.*  When SCS and TOG excluded Herrick from the venture and acquired the Orleander Group themselves, Herrick sued for, among other things, breach of fiduciary duty.  *Id.* at 333-34.

The Second Circuit affirmed the District Court's conclusion that Herrick, SCS, and TOG had entered into a binding joint venture agreement to "work together to attempt to acquire Orleander."  *Id.* at 341.  In support of this conclusion, the court expressly noted that the parties had agreed that TOG, SCS, and Herrick "will be equal owners" of Orleander, explaining that "[t]he anticipated equal ownership of Orleander contemplates the sharing of profits and losses." *Id.* at 339, 341.  The court also relied on the fact that Herrick that made substantial capital contributions to TOG, the entity that was to be used to acquire Orleander, as well as several payments directly to the attorneys hired to prepare documents relating to the proposed acquisition.  *Id.* at 339-41.  It also noted that the parties had contributed capital to TOG's checking account; significantly, the court found it unimportant that the three partners had not all contributed the same amounts.  *Id.* at 340.   Finally, the Second Circuit expressly rejected the defendants' characterization of the parties' agreement as merely "a failed stab at an acquisition

agreement," holding that the agreement was to "work together to attempt to acquire Orleander, and [either] acquire it together or not at all." *Id.* at 341.

Here, as in *SCS Commc'ns*, the Five Individuals entered into a joint venture and/or partnership agreement to jointly develop a business to develop, produce, and sell certain legal cannabis products. The Five Individuals, moreover, were equal owners of the Business and its assets, and, just as in *SCS Commc'ns*, also agreed to be equal owners of the public entity that was to acquire those assets, thus "contemplat[ing] the sharing of profits and losses." *Id.* The Five Individuals also contributed capital and other resources to the Business, including funds that were wired by Herman and Lukash to a "GrowOpp" account. Finally, just as in *SCS Commc'ns*, the Five Individuals' agreement was to develop and launch the Business "together or not at all" – an agreement that Ellins, Denkin, and Bianco violated when they sold and/or enabled the sale of the Partnership Assets to GrowBlox Sciences, thus depriving the Partnership of a valuable opportunity. Accordingly, for the reasons explained by the Second Circuit in *SCS Commc'ns* and above, Herman and Lukash have adequately alleged the existence of a binding partnership and/or joint venture agreement with Ellins, Denkin, and Bianco.

C.    The Proposed Second Amended Counterclaims State a Claim for
       Breach of Fiduciary Duty and/or Aiding and Abetting Thereof

"In New York, the elements of a claim for breach of fiduciary duty are breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *Anwar,* 728 F. Supp. 2d at 415 (citation omitted). "To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show:  (1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach." *In re MF Global Holdings Ltd. Inv. Litig.,* 998 F. Supp. 2d 157, 182 (S.D.N.Y. 2014)

(citation omitted).  Here, the proposed Second Amended Counterclaims adequately allege each of the elements of a breach of fiduciary duty claim against Ellins, Denkin, and Bianco, or, alternatively, a claim for aiding and abetting breach of fiduciary duty against Denkin and Bianco.

*First*, there can be no serious dispute that, as co-partners and/or co-joint venturers, Ellins, Denkin, and Bianco owed a fiduciary duty to Herman and Lukash, because "[i]t is well settled … that a partner in an organization owes a fiduciary duty of loyalty to fellow partners."  *Maillet v. Frontpoint Parties, L.L.C.,* No. 02 CIV. 7865 (GBD), 2003 WL 21355218, at *3 (S.D.N.Y. June 10, 2003); *see also Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989) ("a general partner is held to the same stringent duty of loyalty owed by a corporate director."); *see also Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 472 F. Supp. 2d 544, 551 (S.D.N.Y. 2007) ("The general partner owes fiduciary duties to limited partners … and to other general partners").

It is likewise well settled that "[j]oint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty."  *Ebker v. Tan Jay Int'l Ltd.*, 741 F. Supp. 448, 468 (S.D.N.Y. 1990) *aff'd sub nom. Ebker v. Tan Jay*, 930 F.2d 909 (2d Cir. 1991) (citation omitted).  Thus, "[s]trict adherence to the rule of undivided loyalty has been insisted upon by the Courts without exception."  *Id.*; *see also Shore Parkway Associates v. United Artists Theater Circuit, Inc.*, No. 92 CIV 8252 (JFK), 1993 WL 361646, at *4 (S.D.N.Y. Sept. 14, 1993) (same).

*Second*, the proposed Second Amended Counterclaims also adequately allege a breach of the fiduciary duties owed by Ellins, Denkin, and Bianco.  Specifically, the pleading alleges that, on March 13, 2014, Ellins, enabled by Denkin and Bianco – and without the knowledge or consent of Herman and Lukash – entered into an Asset Sale Agreement pursuant to which assets

21

belonging to the Partnership – and thus owned equally by Herman and Lukash – were sold to GrowBlox Sciences.  (2d Am. CC ¶¶ 50, 60, 61).  Through this sale, Ellins, Denkin, and Bianco misappropriated not only the valuable Partnership Assets, but also a valuable opportunity rightfully belonging to the Partnership.  Indeed, the Asset Sale Agreement makes clear that Ellins sold assets "conceived, owned in whole or in part, or developed by [him] *or his associates*;" these "associates" include Herman and Lukash.  (*Id.* at 51).

Though Ellins was the seller in the Asset Sale Agreement, Denkin and Bianco facilitated the sale of assets that they knew belonged to the Partnership.  Among other things, both Denkin and Bianco provided Ellins with lists of assets to sell to GrowBlox Sciences prior to the sale on March 13, 2014, consented to the sale, and were compensated from the sale.  Bianco, for example, received at least 980,000 shares – and perhaps as many as 2 million shares – of GrowBlox Sciences shares, in return for his assistance with and acquiescence to the sale.  Additionally, both Denkin and Bianco knew of the sale for weeks before it occurred, but failed to inform Herman and Lukash of the sale.  To the contrary, Ellins, Denkin, and Bianco continued to work with Herman and Lukash towards the Business through early March 2014.  (*Id.* at ¶¶ 59, 60).

The unilateral sale of assets belonging to the Partnership, the misappropriation of a valuable opportunity rightfully belonging to the Partnership, and the failure by Ellins, Denkin, and Bianco to inform Herman and Lukash of the sale, constituted a clear breach of the fiduciary duties owed by Ellins, Denkin, and Bianco.  *See SCS Commc'ns*, 360 F.3d at 343 (affirming district court's conclusion that defendants breached agreement to jointly acquire a business by acquiring the business without one of the joint venturers); *Antares Mgmt. LLC v. Galt Global Capital, Inc.*, No. 12-CV-6075 TPG, 2013 WL 1209799, at *11 (S.D.N.Y. Mar. 22, 2013)

(plaintiff adequately stated a claim that defendants "breached the fiduciary duties owed under the partnership by exploiting plaintiffs' contacts for defendants' own benefit," without compensating plaintiffs for the value of such contacts); *Sriraman v. Patel*, 761 F. Supp. 3d 7, 18-19 (E.D.N.Y. 2011) ("it is axiomatic that if [an] opportunity fairly belongs to the partnership, even if [a partner] honestly believes it does not, [the partners] will have breached his fiduciary duty to his partner by not offering it" to the partnership and instead "keep[ing] [the] opportunity to himself"); N.Y. P'ship Law § 51 ("[a] partner is a co-owner with his partners of specific partnership property," and no partner has a "right to possess such property for any other purpose without the consent of his partners.").

Alternatively, the proposed Second Amended Counterclaims state a claim against Denkin and Bianco for aiding and abetting Ellins's breach of fiduciary duty. As co-partners and/or co-joint venturers, Denkin and Bianco had actual knowledge both of Ellins's status of a fiduciary and of his breach thereof through the sale. However, rather than inform Herman or Lukash of the sale, Denkin and Bianco instead facilitated the sale by, among other things, providing lists of assets to Ellins to include in the Asset Sale Agreement, consenting to the sale, and receiving compensation from the sale. (2d Am. CC ¶ 59).

*Finally*, the proposed Second Amended Counterclaims also allege that Herman and Lukash were damaged by the aforementioned breach of fiduciary duty, in that they were never compensated for the value of the Partnership Assets sold and were deprived of a valuable opportunity rightfully belonging to the Partnership. Under the express terms of the Asset Sale Agreement, Ellins received 12,500,000 GrowBlox Shares, which he issued to a variety of individuals in return for their work in furtherance of the Business – but not to Herman and Lukash. Thus, the pleading seeks at least $9 million in damages.

D.     The Proposed Second Amended Counterclaims
       State a Claim for Declaratory Relief

"The Declaratory Judgment Act, by its express terms, vests a district court with discretion to exercise jurisdiction over a declaratory action," providing "In a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 411 F.3d 384, 389 (2d Cir. 2005); 28 U.S.C. § 2201(a) (emphasis added).  "A declaratory judgment action presents an actual controversy if 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *In re Prudential Lines Inc.*, 158 F.3d 65, 70 (2d Cir. 1998) (*citing Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Furthermore, "[i]n order to decide whether to entertain an action for declaratory judgment, [the Second Circuit has] instructed district courts to ask:  (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty. *Duane Reade*, 411 F.3d at 389.

Here, there is an actual controversy over whether the Partnership existed, what Herman's and Lukash's rightful stake in that Partnership was, whether the assets sold to GrowBlox Sciences pursuant to the Asset Sale Agreement belonged to the Partnership, and whether the opportunity to launch the Cannabis Business rightfully belonged to the Partnership.  Thus, the proposed Second Amended Counterclaims adequately plead a claim for declaratory relief.

E.     The Unjust Enrichment, *Quantum Meruit*, and
       Breach of Contract Claims are Not at Issue in This Motion

The Court's June 2, 2015 Order denied Counterclaim Defendants' motion to dismiss the unjust enrichment and *quantum meruit* claims.  Furthermore, Defendants did not move to dismiss

the breach of contract claim.  These claims, therefore, are not at issue in this motion to amend. The only changes made in the Second Amended Counterclaims to these claims was to clarify the specific parties to each claim and the relief sought in the *quantum meruit* claim.

**<u>Conclusion</u>**

WHEREFORE, for the reasons set forth above, Counterclaimants respectfully request that the Court grant them leave to serve and file the proposed Second Amended Complaint, and award such other relief as the Court deems just and proper.

Dated: New York, New York
       July 1, 2015

                                        OLSHAN FROME WOLOSKY LLP

                                  By:   */s/ Thomas J. Fleming*
                                          Thomas J. Fleming
                                          Renee M. Zaytsev
                                          Park Avenue Tower
                                          65 East 55th Street
                                          New York, New York 10022
                                          (212) 451-2300

                                          *Attorneys for GCM Administrative*
                                          *Services, LLC, Strategic Turnaround*
                                          *Equity Parties, L.P. (Cayman), Seth M.*
                                          *Lukash, Gary Herman, and Digital*
                                          *Creative Development Corporation*