UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GROWBLOX SCIENCES, INC.,

                    Plaintiffs,

      – against –

GCM ADMINISTRATIVE SERVICES, LLC,
SETH M. LUKASH, GARY HERMAN, and
STRATEGIC TURNAROUND EQUITY
PARTNERS, LP (CAYMAN),

                    Defendants.

DIGITAL CREATIVE DEVELOPMENT
CORPORATION, GCM ADMINISTRATIVE
SERVICES, LLC, STRATEGIC TURNAROUND
EQUITY PARTNERS, LP (CAYMAN), SETH M.
LUKASH, and GARY HERMAN,

                    Counterclaimants,

      – against –

GROWBLOX SCIENCES, INC., TODD DENKIN,
JOSEPH J. BIANCO, TUMBLEWEED HOLDINGS,
INC. f/k/a GROWOPP HOLDINGS, INC., CRAIG
ELLINS, and GROWOPP, LLC,

                    Counterclaim-Defendants.

**OPINION AND ORDER**

14 Civ. 2280 (ER)

RAMOS, D.J.:

      Plaintiff GrowBlox Sciences, Inc. ("Growblox Sciences") brings this action against GCM

Administrative Services, LLC ("GCM"), Strategic Turnaround Equity Partners, LP ("Strategic"),

Seth M. Lukash ("Lukash"), and Gary Herman ("Herman") (collectively, "Defendants").  *See*

Am. Compl., Doc. 3.  Plaintiff seeks a declaratory judgment as to whether Defendants have a

right to convert certain debt instruments into shares of Growblox Sciences common stock,[1] pursuant to promissory notes which Strategic and GCM Administrative Services, LLC ("GCM") issued to an entity named GrowOpp, LLC ("GrowOpp"). *Id*. at ¶¶ 2, 11, 12.

Defendants, along with Digital Creative Development Corporation ("DCDC") (collectively, "Counterclaimants"), filed counterclaims against Plaintiff, GrowOpp LLC, Craig Ellins ("Ellins"), Todd Denkin ("Denkin"), Joseph J. Bianco ("Bianco") and Tumbleweed Holdings, Inc. ("Tumbleweed") (collectively, "Counterclaim-Defendants"). Am. Countercl., Doc. 26. Counterclaimants asserted five causes of action: (1) declaratory relief that a general partnership was formed; (2) breach of fiduciary duty; (3) unjust enrichment; (4) quantum meruit; and (5) breach of contract. *Id*. Counterclaim-Defendants moved to dismiss the first four counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Counter-Def.'s Mot. Dismiss, Doc. 30. The Court denied the motion with respect to the unjust enrichment and quantum meruit claims, but granted the motion with respect to the declaratory judgment and breach of fiduciary duty claims, dismissing those claims without prejudice. Order, Doc. 44.

On July 1, 2015, Counterclaim-Defendants filed a motion for leave to file a supplemental complaint, seeking to add a breach of contract claim against Counterclaimants.[2] Proposed Supplemental Complaint of Plaintiff and Counterclaim-Defendants ("Suppl. Compl."), Doc. 48-

---

[1] Plaintiff filed its Amended Complaint under the name Signature Exploration and Production Corporation ("Signature"). Since then, Plaintiff has started operating under the name GrowBlox Sciences, Inc. *See* Countercl., Doc. 11; Answer Countercl., Doc. 14 at 2.

[2] Counterclaimants simultaneously moved for leave to file amended counterclaims. *See* Doc. 50. In addition to the surviving unjust enrichment and quantum meruit claims, Counterclaimants repleaded the declaratory judgment and breach of fiduciary duty claims. Proposed Second Amended Counterclaims, Doc. 51-1. Additionally, as an alternative to the breach of fiduciary duty claim, Counterclaimants pleaded that Denkin and Bianco aided and abetted Ellins's breach of fiduciary duty. *Id.* On March 31, 2016, the Court issued an order granting Counterclaimants' motion. Doc. 73.

1, ¶¶ 82-84.  Specifically, Counterclaim-Defendants assert that Counterclaimants' unjust enrichment claim was made in breach of a waiver provision contained in a contract signed on July 31, 2013 by Herman on behalf of DCDC, Denkin on behalf of GrowOpp, and Lukash on behalf of GrowBlox Holdings, Inc.  *Id.*  For the reasons set forth below, Counterclaim-Defendants' motion is DENIED.

## I. BACKGROUND
### A. Factual Background[3]

In early 2013, Counterclaim-Defendants Ellins, Denkin, and Bianco (the "Ellins Group") sought to raise capital to develop a new public company devoted to the development of "growing systems" for marijuana.  Suppl. Compl. ¶ 32.  GrowOpp, a company founded by Denkin, already possessed the intellectual property that would form the foundation of the new company.  *Id.* ¶¶ 22-23.  The Ellins Group sought to transfer the GrowOpp intellectual property to the new company, and obtain financing to take that company public.  *Id.* ¶¶ 32, 36.

Around the same time, Counterclaimant Herman contacted Ellins and suggested that he and his associates could assist Ellins in raising capital for the development of the company.  *Id.* ¶ 33.  Specifically, Herman represented that he and Lukash (the "Herman/Lukash Group") could raise at least $2 million to finance the company.  *Id.* ¶ 35.  The Herman/Lukash Group further proposed to employ a private placement of securities of an existing public "shell" company that Herman and Lukash controlled, DCDC, and represented that they could bring that company into the transaction in a "clean" status (i.e. without existing stockholders whose holdings or potential claims could complicate an offering or additional financings).  *Id.* ¶ 38.  Thus GrowOpp would

---

[3] The following factual background is based on the allegations in the Proposed Supplemental Complaint of Plaintiff and Counterclaim-Defendants, Doc. 48-1, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  In addition, it cites documents which are incorporated by reference.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

transfer its cannabis-related assets and intellectual property to DCDC, which would raise capital for the company and issue stock to shareholders.

On July 31, 2013, the Ellins Group and the Herman/Lukash Group executed a non-binding letter of intent ("LOI"). *Id.* ¶ 39. By its terms, the LOI describes a "Proposed Transaction" whereby DCDC, GrowOpp, and a company known as GrowBlox Holdings, Inc. would merge through the acquisition by DCDC of substantially all of the assets of GrowOpp and GrowBlox Holdings, Inc.[4] Am. Compl., Ex. H ("LOI") at 1. DCDC would then be renamed Growblox Holdings, Inc. ("Growblox Holdings"), and reincorporate in Delaware.[5] Suppl. Compl. ¶ 38; LOI at 1.

The LOI states that in connection with the Proposed Transaction, the parties would raise $1.5 million. LOI at 1. According to Counterclaim-Defendants, the understanding amongst the parties was that the Herman/Lukash Group would raise those funds, while the Ellins Group continued development of the product. Suppl. Compl. ¶ 41.

The LOI also contained a waiver of liability provision ("Waiver Provision") with respect to the parties and their representatives. LOI ¶ 6. The Waiver Provision states, in pertinent part:

> Unless and until the Purchase Agreement has been so executed and delivered, *none of the parties or any of their respective Representatives has any legal obligation to any other party of any kind with respect to the Proposed Transaction*, whether because of this letter of intent or any other written or oral expression with respect to the Proposed Transaction or otherwise[.] [. . .]
>
> *Neither party will have (and each party hereby irrevocably waives) any claims against the other party or any of its Representatives*

---

[4] The LOI describes GrowBlox Holdings, Inc. as a Delaware Corporation with its principal place of business in Henderson, Nevada. Am. Compl., Ex. H at 1. It is not a party to this litigation, however, and its management is nowhere described.

[5] The LOI indicates that Growblox Holdings would hold 60% of the resulting company's shares, with the remaining 40% of shares designated for new investors and existing shareholders of DCDC. LOI at 8.

> *arising out of or relating to the Proposed Transaction* other than those, if any, that either such party may in the future have as a party to a Definitive Agreement (if any) with the other party and then only in accordance with the terms thereof, or with respect to the Binding Matters.

*Id.* (emphases added).  The LOI was signed by Herman on behalf of DCDC, Denkin, on behalf of GrowOpp LLC, and Lukash as "Chief Executive Officer" on behalf of Growblox Holdings, Inc.  *Id.* at 6.

The LOI terminated by its own terms, ninety days after signing, on October 29, 2013, without the proposed transaction having taken place.[6]  Suppl. Compl. ¶ 48.  However, the Waiver Provision survived termination of the agreement.  Although the LOI provides that the agreement shall be deemed "null, void, and of no further force or effect" upon termination, paragraph six carves out exceptions to this provision, including with respect to the Waiver Provision.  LOI ¶¶ 6-7.

The parties subsequently proposed another potential transaction, detailed in a document entitled "Confidential Private Placement Memorandum," (the "PPM").  *See* Fleming Aff., Doc. 35, Ex. 1 ("PPM").  The PPM, dated December 15, 2013, describes a private placement offering of shares of Tumbleweed Holdings, Inc. ("Tumbleweed"), a Delaware corporation.  *Id.*  The PPM states that 13,714,350 shares of Tumbleweed stock were outstanding and owned in equal amounts by Herman, Lukash, Ellins, Denkin, and Bianco.  *Id.* at 00004057. Furthermore, according to the PPM, Tumbleweed controlled one hundred percent of GrowOpp's "membership interests."  *Id.*  As with the Proposed Transaction in the LOI, however, the transaction described in the PPM never occurred.  Suppl. Compl. ¶ 71.

---

[6] Between July 5, 2013 and December 20, 2013, Herman and Lukash, through entities named GCM and Strategic, provided GrowOpp with loans in the form of promissory notes, which included an option to convert the principal due into shares of DCDC common stock.  Suppl. Compl. ¶ 59; *see* Am. Compl., Exs. A-G.

According to Counterclaim-Defendants, the transactions described in the PPM and the LOI, though involving differently named entities, are "for all intents and purposes the same transaction; a transaction in which GrowOpp, which held the intellectual property and related business assets developed by the Ellins Group, was to merge into a public shell to be furnished by the Herman/Lukash Group." *Id.*

Although neither transaction came to pass, the Ellins Group continued to work on the development and execution of the cannabis business. *Id.* ¶ 49. According to Counterclaim-Defendants, in February 2014, the Ellins Group, without the assistance of the Herman/Lukash Group, located financing in excess of $4 million. *Id.* ¶ 51. In March 2014, the Ellins Group sold the cannabis-related intellectual property and assets, and merged their business into a public vehicle called Signature exploration. *Id.* ¶ 52. That entity later changed its name to GrowBlox Sciences. *Id.*

### B. Procedural Background

GrowBlox Sciences commenced this declaratory judgment action against GCM, Strategic, Lukash, and Herman on April 1, 2014. *See* Compl., Doc. 2. It filed an Amended Complaint on April 9, 2014. *See* Doc. 3. On May 9, 2014, Defendants filed their Answer, which included counterclaims brought by themselves, along with DCDC, against GrowBlox Sciences, GrowOpp LLC, Ellins, Denkin, Bianco, and Tumbleweed. Countercl., Doc. 11. Defendants filed Amended and Supplemental Counterclaims on November 19, 2014. Am. Countercl., Doc. 26. On June 2, 2014, this Court issued an Order granting in part and denying in part Counterclaim-Defendants' motion to dismiss four of the five alleged Counterclaims, preserving Counterclaimants' unjust enrichment and quantum meruit claims, and dismissing Counterclaimants' declaratory judgment and breach of fiduciary duty claims without prejudice. Order, Doc. 44.

Counterclaimants' unjust enrichment claim alleges that Herman and Lukash contributed their efforts, skills, and capital to help develop the intellectual property and assets of the cannabis business. Am. Countercl. ¶¶ 17-21, 26, 53-54. In doing so, they conferred a benefit to Counterclaim-Defendants, for which they were not paid. *Id.* ¶¶ 55-57.

On July 1, 2016, Counterclaim-Defendants filed a motion for leave to file a supplemental complaint, asserting that Counterclaimants' unjust enrichment claim breached the Waiver Provision of the LOI. Suppl. Compl. ¶¶ 82-84. Counterclaim-Defendants further allege that "[a]s a direct and proximate result" of the Herman/Lukash Group's breach of the LOI, the Ellins Group has been injured by "expenditure for and the accumulation of legal fees and costs, by interference with the Ellins Group's business and development activities, and by inability to raise funds due to the litigation." *Id.* at ¶ 84. Counterclaim-Defendants claim damages estimated to exceed $10 million. *Id.*

## II. DISCUSSION

### A. Motion for Leave to File a Supplemental Complaint

Federal Rule of Civil Procedure Rule 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d); *see also Shi-Hsin Chang v. Phoenix Satellite Television (U.S.), Inc.*, No. 14 Civ. 2686 (PKC), 2014 WL 5017838, at *5 (S.D.N.Y. Sept. 22, 2014). Absent evidence of bad faith, futility, or prejudice, a motion to supplement a pleading should be granted. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995); *see also Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590-91 (S.D.N.Y. 2008) (same). The burden is on the non-moving party to demonstrate the existence of such grounds. *See Beckett v. Inc. Vill. of Freeport*, No. 11 Civ. 2163 (LDW) (AKT), 2014 WL 1330557, at *7 (E.D.N.Y. Mar. 31, 2014).

Counterclaim Defendants' theory is that Counterclaimants' unjust enrichment counterclaim violated the Waiver Provision of the LOI, and thus that Counterclaimants breached the LOI in bringing the counterclaim. Because the counterclaim arose after the filing of the original complaint – "the pleading to be supplemented," Fed. R. Civ. P. 15(d) – it is within the category of "transaction[s], occurrence[s], or event[s] that happened" after that time, *id.* However, because the Court finds Counterclaim-Defendants' claim that Counterclaimants breached the LOI to be futile, their motion to supplement the complaint with a breach of contract claim must be dismissed.

### B. Rule 12(b)(6) Motion to Dismiss Standard

A supplemental pleading is deemed futile only if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Cummings-Fowler v. Suffolk Cty. Cmty. Coll.*, 282 F.R.D. 292, 298 (E.D.N.Y. 2012); *cf. Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his]

claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiffs' claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The Court may consider a document that is attached to the complaint, incorporated by reference or integral to the complaint, provided there is no dispute regarding its authenticity, accuracy or relevance. *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the documents." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). The Proposed Supplemental Complaint cites and relies on two documents: (1) the July 31, 2013 LOI, attached to Plaintiff's Amended Complaint; and (2) the December 15, 2013 PPM, which Counterclaimants submitted contemporaneously with the filing of their opposition papers. *See* Suppl. Comp ¶¶ 39-53, 71-72. The LOI and PPM are clearly referenced by the Proposed Supplemental Complaint, are relevant to the question of whether Counterclaimants breached the

LOI's Waiver Provision, and are therefore incorporated by reference. Thus, the Court will consider the LOI and PPM in deciding the present motion.

### C. Application to the Pleadings

Counterclaim-Defendants argue that Counterclaimants' unjust enrichment claim breached the LOI's Waiver Provision, which states in pertinent part:

> Unless and until the Purchase Agreement has been so executed and delivered, *none of the parties or any of their respective Representatives has any legal obligation to any other party of any kind with respect to the Proposed Transaction*[.] [. . .]
>
> *Neither party will have (and each party hereby irrevocably waives) any claims against the other party or any of its Representatives arising out of or relating to the Proposed Transaction . . .*

LOI ¶ 6.

Counterclaim-Defendants assert that the Waiver Provision constitutes a covenant not to sue. "Covenants not to sue, requiring that the obligor forbear from bringing any current or future claims against the obligee, are valid in New York."[7] *Kamfar v. New World Restaurant Group, Inc.*, 347 F. Supp. 2d 38, 50 (2004) (listing cases). However, under New York law, "[a] defendant normally may not recover damages—i.e., litigation expenses—for breach of a covenant not to sue unless the parties specifically intended such recovery." *Id.* at 51 (dismissing a breach of contract claim for violation of a covenant not to sue). As explained by the Second Circuit:

> Certainly it is not beyond the powers of a lawyer to draw a covenant not to sue in such terms as to make clear that any breach

---

[7] Counterclaimants argue that the Waiver Provision is *not* in fact a "covenant not to sue." According to Counterclaimants, the Waiver Provision, rather than indicating any agreement by the parties to restrain from bringing claims arising out of or relating to the Proposed Transaction, merely states that those claims shall be unavailable should the parties bring suit. The Court expresses doubt as to whether this is a meaningful distinction. However, it need not decide one way or the other. Even interpreting the Waiver Provision as a covenant not to sue, Counterclaim-Defendants may not use the Waiver Provision offensively to assert a breach of contract claim.

> will entail liability for damages, including the most certain of all –
> defendant's litigation expense.  Yet to distill all this out of the
> usual formal covenant would be going too far; its primary function
> is to serve as a shield rather than as a sword. . . .  In the absence of
> contrary evidence, sufficient effect is given the usual covenant not
> to sue if, in addition to its service as a defense, it is read as
> imposing liability only for suits brought in obvious breach or
> otherwise in bad faith . . . .

*Artvale v. Rugby Fabrics Corp.*, 363 F.2d 1002, 1008 (2d Cir. 1966)[8]; *see also Sauer v. Xerox Corp.*, 5 Fed. Appx. 52, 56 (2d Cir. 2001) (upholding dismissal of a counterclaim alleging violation of an express covenant not to sue, because there was "no affirmative indication that violation of this provision of the lease gives rise to an independent cause of action for attorney's fees."); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 529 (2d Cir. 1985) (upholding the district court's dismissal of a counterclaim for damages incurred in defending a lawsuit because the covenant not to sue lacked a clear provision for recovery of litigation expenses and the plaintiff's suits "were not brought in bad faith").

    Here, the LOI does not indicate any intention by the parties to provide for damages in the event that a party brings a claim waived under the LOI.  Nor was Counterclaimants' unjust enrichment claim brought in obvious breach of the LOI or in bad faith.  The Court has already found that the LOI did not necessarily continue to define the relationship between the parties after it expired by its terms.  Order, Doc. 44, at 10-11.  In fact, whether the parties continued to operate under the terms of the LOI, or whether they instead formed a partnership or entered into

---

[8] The Second Circuit opinion in *Artvale* did not state explicitly whether its holding was based on New York or federal common law, but subsequent cases have treated *Artvale* as expressing the Second Circuit's view of New York law on this issue.  *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 586 F. Supp. 1286, 1288 (S.D.N.Y. 1984), *aff'd*, 757 F.2d 523; *Versatile Housewares & Gardening Systems, Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 245 (S.D.N.Y. 2011) ("*Artvale* and its progeny are generally taken to be the Second Circuit's view on New York law").

another agreement, is a matter of dispute.[9] *Id.* It is therefore unclear whether the LOI's Waiver Provision barred Counterclaimants' unjust enrichment claim.

Given that there was no obvious breach of the Waiver Provision or bad faith on the part of Counterclaimants, and because the Court does not find that "the parties here intended the formal covenant to subject the plaintiff to damages for a good faith test of its scope," *Artvale*, 363 F.2d at 1008, Counterclaim-Defendants cannot, under New York law, use the Waiver Provision offensively to seek damages for breach of contract.

### III. CONCLUSION

For the reasons set forth above, Counterclaim-Defendants' motion to file a supplemental complaint is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 48.

It is SO ORDERED.

Dated: April 29, 2016
New York, New York

Edgardo Ramos, U.S.D.J.

---

[9] Counterclaim-Defendants claim that the transaction defined in the LOI and the PPM is "for all intents and purposes the same transaction," and that the purpose of the LOI's Waiver Provision was to memorialize the fact that the parties would have no claims against the others "arising from their association." Suppl. Compl. ¶¶ 39, 71. However, the Waiver Provision only waives claims "arising out of or relating to the *Proposed Transaction*." LOI ¶ 6. The "Proposed Transaction" is expressly defined as the merger of DCDC, GrowOpp, and GrowBlox Holdings, Inc. through the acquisition by DCDC of substantially all of the assets of GrowOpp and GrowBlox Holdings, Inc. Counterclaimants assert that their unjust enrichment claim has nothing to do with this specific transaction. LOI at 1. Rather, they claim that they contributed to the development of cannabis-related assets and intellectual property, which Counterclaim-Defendants later sold, and now "seek to recover the fair value of the services and assets that they provided." Mem. of Law in Opp. to Pl./Countecl. Defs.' Mot. for Leave to Serve and File Suppl. Compl., Doc. 56, at 20. Thus, the Court cannot conclude that the claim was brought in bad faith or in obvious breach of the Waiver Provision.